JOSIAH DAVIE ET AL. v. THE LUMBERMAN'S MINING
COMPANY.

*Contract—Mutuality—Construction.*

1. An agreement by which miners are to work at mining the ore in a specified pit for $1.50 per ton, "as long as we can make it pay," is not of such a character as to entitle them to damages for its breach.

2. The clause, "as long as we can make it pay," is not in any sense ambiguous, and can have no different meaning when applied to mining than it has in any mechanical or agricultural employment.

Error to Menominee. (Stone, J.) Argued November 1 and 2, 1892. Decided November 18, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Ball & Hanscom* and *B. J. Brown,* for appellant.

*R. C. Flannigan (F. O. Clark,* of counsel), for plaintiffs, contended:

1. It is an old and familiar principle of law in the interpretation of obligations in contracts that whatever can be made certain by proof *is certain;* and that it might be proved by other miners whether the work could be made to pay or not by plaintiffs is plain; and in determining any such contract, it is simply a question of what can be ascertained by proof with reasonable certainty; citing *Atkinson v. Morse,* 63 Mich. 276.

2. It is an elementary rule that the obligation is mutual where both parties are required by the agreement to do something of a substantial character, the promise of one being a consideration for that of the other; and this is a sufficient consideration for the purpose of enforcing specific performance of a contract, even for the sale or leasing of real estate; citing Wat. Spec. Perf. § 196; *Ewins v. Gordon,* 49 N. H. 444.

3. It has been frequently held that where a conditional agreement has been made that if certain explorations shall be performed

by the licensee by a certain time, and ore found, the contract shall ripen into an absolute agreement to lease as set forth in the contract, and the condition upon which the lessee was to have leased has been fully performed, or work entered upon according to the agreement, the conditional agreement ripens into an absolute one, and the mutuality of consideration becomes complete; citing Wat. Spec. Perf. § 200; *Clason v. Bailey*, 14 Johns. 484; *Hawralty v. Warren*, 18 N. J. Eq. 124; *Hall v. Center*, 40 Cal. 63; *Clark v. Clark*, 49 Id. 586; *Railroad v. Bartlett*, 3 Cush. 224; *Corson v. Mulvany*, 49 Penn. St. 88; *In re Hunter*, 1 Edw. Ch. 1.

4. If the owner of a piece of land executes an instrument in writing by which he promises to convey the land to another provided the latter will erect a house worth $5,000 on it within one year, and pay the owner a certain price for the land within two years, and such person erects the house within the appointed time, without dissent by the owner, and then tenders the stipulated price and demands a deed, a court of equity will decree a conveyance. The *mutuality* and consideration consist in the fact that the vendee has *done* upon the *promise* of the vendor what the latter required, and it is immaterial that it was done without entering into a previous undertaking to do it; citing Wat. Spec. Perf. § 200; *Napier v. Darlington*, 70 Penn. St. 64; *Farwell v. Lowther*, 18 Ill. 252; *Esmay v. Gorton*, Id. 483; *Perkins v. Hadsell*, 50 Id. 216.

5. One promise based upon the promise of another creates a valid contract; citing *Fraser v. Backus*, 62 Id. 540.

DURAND, J. On October 7, 1889, the plaintiffs, who were practical miners, entered into a verbal agreement with the defendant company, through its mining captain, to go to work in what is called the "Cave Pit," and were to receive $1.50 per ton for all the ore they produced, *as long as they could make it pay*. The plaintiffs practically agree that the mining captain, with whom the contract was made, said to them that he would give $1.50 a ton for all the ore they could produce anywhere in the pit, to which they responded, "All right; we will take the contract, and work it *as long as we can make it pay*." The plaintiffs were to put in skip-roads for hoisting the ore, and were to put it in position for hoisting, and the defendant was to furnish the hoisting machinery and do

the hoisting.   Acting under this contract, the plaintiffs went to work in the pit.   They leveled off a place, and put down some plank platforms to pile ore upon, and sorted out some ore from the loose rock, and took some ore also out of a seam in the foot-wall of the pit, and placed it on these platforms.   On the morning of the third day after they began to work, the captain of the defendant company went down, and found the plaintiffs digging into the foot-wall of the . pit, upon which he ordered them to quit mining at that point.   A controversy then arose between him and the plaintiffs in reference to where they had a right to dig, and as to the extent of their right, which ended by the plaintiffs quitting the work.

The plaintiffs contend that they had a right to mine at any point they chose, and that they had a right to dig into and through the foot-wall, and that they had a right, under their contract, to mine all ore which might be newly discovered by them after digging through the walls of the pit, and that they were not confined to such ore as they might find within the pit as it had already been opened and worked.

The defendant contends that, even if the contract is a valid one, it merely had reference to such ore as might be found within the pit as it had been opened and worked, and that it gave plaintiffs no right to dig or break through the walls of the pit, and mine ore found outside of the walls; that it was essentially what is known among miners as a " scramming contract," which is one that confers the right to mine and gather such ore as may be left within the limits of a mine or pit as it has been opened and mined before; that nothing beyond that was ever thought of; and that the act of the plaintiffs in breaking through the walls of the pit, and mining in a newly-discovered vein of ore, was never contemplated by the parties, and that

it would greatly endanger the property of the defendant, as well as the lives of the miners, by rendering it likely to cave, as had happened before, and for which reason it is alleged this pit was named " Cave Pit;" and the defendant insists that the plaintiffs were stopped from digging in the foot-wall for the reasons stated, while the plaintiffs contend that the real reason was that the defendant thought they would make too much money if allowed to mine in the rich vein of newly-discovered ore beyond the foot-wall.

The plaintiffs also contend that the term employed in the contract, " as long as we can make it pay," has a special signification among miners, and means as long as they could make " company account" wages, being such wages as the company was then paying by the day for such work, and they introduced some testimony, against the defendant's objection, tending to prove this to be so; while the defendant denies that this is so, and contends that the term has no special signification.

The plaintiffs also contend that they had discovered a body of ore which amounted to at least 17,000 tons, and that, if they had been allowed to mine it,—as they claim they had a right to do under the contract referred to,— they would have realized a profit of $22,000; while the defendant contends that this is not true, and that the dangers and contingencies were so great that no estimate of profits could be made which would be at all reliable, or upon which the jury could intelligently act in attempting to decide upon what the damages should be.

The questions of fact were all fairly submitted to the jury, who found a verdict of $1,000 for the plaintiffs, and a judgment for that amount was thereupon rendered in their favor.

The defendant claims error.

The questions we are called upon to consider all relate to and depend upon the two main propositions in the case,

which are whether or not the contract is of such a character as to entitle the plaintiffs to damages for its breach, and, if it is, then whether or not the profits which the plaintiffs claim they would have made, if they had been allowed to proceed to mine the ore as long as they could make it pay, are so speculative, uncertain, and contingent as to make it improper to permit the jury to pass upon them in deciding upon the damages to which the plaintiffs are entitled.

We have sought in vain for a valid reason to sustain the plaintiffs in their contention in this case, but we cannot do so. We do not think the contract is of such a character as to be enforceable as an executory contract. The agreement was simply that the plaintiffs would work at mining the ore in "Cave Pit" for $1.50 per ton as long as they could make it pay. No limitations were put upon their methods, or how or in what manner they should conduct the work in order to make it pay, nor does it give the defendant any voice in deciding upon whether or not the plaintiffs could make it pay, nor does it place the subject of the contract upon any certain basis upon which a jury can lawfully and justly arrive at a fair rule of damages in case of its violation. Under this contract, the plaintiffs must be presumed to be the sole judges of whether or not it would pay them to do the work, and of how long they should continue it. Neither do we think that the clause, "as long as they could make it pay," has any special signification in this case. It is not in any sense ambiguous, and can have no different meaning when applied to mining than it has in any mechanical or agricultural employment. It is a term used daily in all the different enterprises and occupations in which men are engaged, and its scope is so well understood that no evidence is necessary to show what it is, or that it means anything different in one case than in another.

When a party agrees to sell articles of merchandise, or deliver the productions of his labor, to another at a certain price as long as he can make it pay, every one must clearly understand that the term is dependent on conditions over which the promisee has no control, and, in so far as any one has the power to make the term effective, it is lodged solely in the promisor, who by judicious purchases or skillful manipulations of labor may be able to make a transaction pay when a more careless, negligent, or improvident person would be unable to do so. This serious element of uncertainty destroys all mutuality in the contract, and gives the promisor full power to say when a further execution of the contract will not be advantageous, because he cannot make it pay. Contracts cannot arise where there is no mutuality, nor can they arise from the action of one party alone where the other has no power to prevent his action.

The uncertainty of the term, "as long as we can make it pay," employed in this contract, is illustrated in the case of *Cummer v. Butts*, 40 Mich. 322. In that case the contract stipulated that on 60 days' notice it might be canceled by either party for "good cause." One of the parties terminated the contract, whereupon the other party, who insisted that no "good cause" for his dismissal existed, brought suit to recover for the profits he would have made if the arrangement had not been interrupted. Mr. Justice GRAVES, in an opinion concurred in by the entire Court, says:

"The difficulty is inherent. It exists in the terms adopted by the parties.

"The requirement of 'good cause,' as something on which the right to revoke by one or the other should depend, is, as here introduced, too vague to be fairly intelligible. It is manifestly applied to each party, but the phrase, 'good cause,' in such connection, as to parties and subject-matter, has no such distinct sense as to furnish a common

and intelligible criterion for the parties, or any determinate sense whatever. It is impossible to say that the wills of the parties concurred, and that each meant exactly what the other did, or even to say what either meant. * * * The case is one where the parties have failed to express themselves in terms capable of being *reduced to lawful certainty by judicial effort.*"

The same general rule is laid down in cases cited in 3 Amer. & Eng. Enc. Law, 844, 845, and notes; *Blanchard v. Railroad Co.,* 31 Mich. 43; *Caswell v. Gibbs,* 33 Id. 331; *Wilkinson v. Heavenrich,* 58 Id. 574.

Under this view of the law, we must hold that the plaintiffs cannot recover under this contract for any prospective profits which they might have made if they had been allowed to complete it, and the jury should have been so instructed.

As this disposes of the case in favor of the defendant, it is unnecessary to discuss the question of damages, or any other question raised by the record.

It follows that the judgment must be reversed, with costs of this Court, and a new trial granted.

The other Justices concurred.