MISSOURI, KANSAS &, TEXAS RAILWAY COMPANY v. N. R. BAGLEY, Administrator of the estate of W. H. Harris & Co.

No. 11135.

1. RAILROADS—Shipper's Contract—Want of Mutuality. H. & Co., of Missouri, entered into a contract with a railway company wherein it was agreed that, if H. & Co. would accept certain offers received by them from persons in Mexico for the purchase of corn, the railway company would transport the same to Laredo, Tex., a point on the Mexican border, within a definite time at a stipulated rate per hundred pounds. Held, that the contract was not binding upon the railway company for want of mutuality, in that H. & Co. were not obligated to ship over the line of said railway.

2. EVIDENCE—Contract in Spanish—Competency of Translator. Certain instruments written in Spanish were translated into English by an expert, who attached to each his affidavit stating that he was a competent translator, and that the documents were accurately and faithfully translated into the English language. Held, that the competency of the translator cannot be established by his own affidavit, but that the party against whom the evidence is offered should be afforded the right of cross-examination for the purpose of testing the qualifications of the witness as an expert, and that the court erred in admitting the documents in evidence. (Gen. Stat. 1897, ch. 97, § 21; Gen. Stat. 1889, ¶4477.)

3. INTERSTATE-COMMERCE LAW—Pleading. A defense that a contract is in violation of the interstate-commerce law of the United States must be pleaded.

Error from Miami district court; JOHN T. BURRIS, judge. Opinion filed April 8, 1899. Reversed.

STATEMENT.

THE plaintiff in error seeks to reverse a judgment of the district court rendered against it in favor of the plaintiff below.  The petition originally contained eleven counts, but the tenth and eleventh were dismissed.  The action was originally commenced by the firm of W. H. Harris & Co., but while it was pending, M. Landa, one of the firm, died, and it was revived in the name of N. R. Bagley, administrator of the estate of W. H. Harris & Co.  The first cause of action in the amended petition reads :

" That at all the times and dates in this petition mentioned, plaintiffs W. H. Harris, N. R. Bagley and M. Landa were, ever since have been and still are copartners under the style of W. H. Harris & Co. ; that at all the like times and dates, defendant, the Missouri, Kansas & Texas Railway Company, was and still is a duly organized corporation, incorporated for the purpose and engaged in the business of transporting goods and chattels as a common carrier for hire ; that at all the times and dates between July 1, 1892, and January 1, 1893, one James Donohue was the duly appointed and acting commercial agent of defendant at Kansas City, Mo., exercising with defendant's knowledge, and also having authority to solicit freight traffic, and to make on behalf of said defendant and in its name oral and written contracts with shippers for the transportation of freight, and to fix rates therefor, to points on defendant's line of railroad and beyond, and particularly to make with plaintiffs the contracts and agree upon the rates and terms in this petition set forth, for the transportation of grain from Kansas City, Mo., to Laredo, Tex., and to other points in Texas and the republic of Mexico.

" That heretofore, and on or about July 28, 1892, plaintiffs received at Kansas City, Mo., from one Marcos Alvarez, of the City of Mexico, in the republic of Mexico, an offer to purchase from plaintiffs 7,500,000 pounds of bulk, mixed, shelled corn, to be

delivered at Laredo, Tex., within four months from date last named, at the price of $1.10 per 100 pounds, payable on presentation of draft with bill of lading attached; that plaintiffs then and there communicated to defendant, through its said agent Donohue, the fact of the receipt of said offer and the terms thereof, and requested said defendant to name a through rate for the transportation of said quantity of such corn from Kansas City, Mo., to Laredo, Tex., within said time; that said defendant, through its said agent, thereupon offered and proposed, if plaintiffs would accept said offer of said Alvarez, to transport said corn promptly, as rapidly as tendered to it, and within the said four months, to said Laredo, Tex., at the rate of 25 cents per 100 pounds. Whereupon plaintiffs notified said defendant, through its said agent, that they, in reliance upon said rate and terms so proposed by defendant, would accept said offer of said Alvarez and bind themselves to deliver said quantity of corn at said Laredo within said time.

"That said defendant thereupon, through its said agent, orally contracted and agreed with plaintiffs to transport said quantity of corn promptly and as rapidly as tendered, and within the time so specified, to said Laredo, Tex., at the rate of 25 cents per 100 pounds; that plaintiffs, relying upon said contract and agreement of defendant, thereupon accepted, with the full knowledge of defendant, said offer, and closed said contract with said Alvarez.

"That defendant, about October 1, 1892, and after having accepted and transported about 3,179,767 pounds of said corn, failed and refused, though often requested thereunto by plaintiffs, to receive or transport the remainder of said corn, to wit, 4,320,233 pounds, or any part thereof; that plaintiffs were then and thereafter unable to procure other transportation for said corn, or any part thereof, to said Laredo, and because of defendant's said default and refusal plaintiffs were prevented from fulfilling their contract so far as aforesaid made with said Alvarez.

"That by reason of the premises plaintiffs suffered injuries, damages, and losses, in this, to wit: That the

market price of such corn at Kansas City, Mo., and vicinity at said time was 67$\frac{6}{7}$ cents per 100 pounds, and said corn would have cost plaintiffs, with said agreed rate of freight added, delivered at Laredo, Tex., 92$\frac{6}{7}$ cents per 100 pounds, of which facts defendant had at all times full knowledge, and because of defendant's said default, plaintiff suffered the loss of the difference between 92$\frac{6}{7}$ cents per 100 pounds, and $1.10 per 100 pounds, the latter being the then market price and value, as well as the said contract price of such corn at Laredo, Tex., to wit, the sum of 17$\frac{4}{7}$ cents per 100 pounds on said 4,320,233 pounds, amounting to the sum of $7406.12.

"Wherefore plaintiffs pray judgment against the defendant for the sum of $7406.12, together with interest thereon at the rate of six per cent. per annum from November 28, 1892, and costs and disbursements of this action."

The second count in the petition is precisely like the first as to the allegations of incorporation of defendant, copartnership of the plaintiffs, and authority of James Donohue, and only differs therefrom as to the date of making the contract with said Marcos Alvarez, alleging the date to be August 4, 1892, and the amount of corn sold to Alvarez, viz., 4,000,000 pounds of bulk, white, shelled corn, at $1.24$\frac{1}{2}$ per 100 pounds. In this cause of action the plaintiffs allege that afterward, and about September 1, 1892, the amount of corn to be delivered under said contract was increased to 7,000,000 pounds, otherwise remaining the same; that defendant, after having accepted and transported 5,763,304 pounds of said corn, failed and refused to receive and transport the remainder, to the plaintiff's damage in the sum of $3250.74.

From the third to the ninth counts, both inclusive, the petition avers the making of contracts by the plaintiffs below with other persons and firms in Mexico for the delivery of corn at prices varying from

$1.25 to $1.32 per hundred pounds, with a failure on the part of the railway company to deliver a large portion of the same, to the plaintiff's damage in the sum of $22,242.69.

In each of these causes of action the plaintiffs allege that upon receiving the propositions from the persons in Mexico they showed each proposition to Donohue, and that Donohue promised them that if they would accept the same and sell the corn to these persons, he, as agent, and upon behalf of the Missouri, Kansas & Texas Railway Company, would agree to transport the corn to Laredo, Tex., within the time alleged. It is further averred that the contract with the defendant railway company was made entirely with Donohue, and was oral in its character.

The answer filed by the defendant railway company contained, among other things: (1) A general denial; (2) a denial that James Donohue had authority, as agent of the railway company, to make the contract set up in the petition; (3) that Donohue was never authorized to make a contract for the delivery of any specific amount of corn within a specific time for the plaintiffs or any one else; nor was he authorized or empowered to contract for the delivery of corn or other freight to points beyond the line of the Missouri, Kansas & Texas railway; that the defendant did receive corn from the plaintiffs and other parties, and did promptly transport the same from Kansas City, Mo., and deliver the same to connecting carriers, to be by them carried to Laredo, Tex., as fast as tendered by the plaintiffs; that plaintiffs agreed that they would receive said corn at Laredo, Tex., and would promptly unload the same; but that, notwithstanding said agreement, and that a large amount of corn had been promptly shipped and transported by

the defendant and connecting carriers to Laredo, Tex., at the request of plaintiffs, yet they wholly failed, neglected and refused to receive said corn and unload the same promptly, as by the terms of their agreement they were to do, but permitted said corn to remain standing in the cars at Laredo, Tex., until the side-tracks and switches were blocked; that notwith-tanding said fact, this defendant continued to receive corn from the plaintiff, and the same was delivered to the Southern Pacific Railway Company at La Grange, Tex., and to the International & Great Northern Railroad Company at Taylor and Mineola, Tex., and from said points transported to points on their respective lines as near Laredo, Tex., as was possible to get; that said connecting carriers notified the defendant that they would receive no more grain until the blockade at Laredo was removed; that because of said blockade, and because the connecting carrier refused to receive cars from the defendant for shipment, the defendant was compelled to decline several shipments of grain which were tendered by plaintiffs and other shippers of grain, corn, and other produce, which refusal was made absolutely necessary because of the want of cars in which to ship the same, and also because of the refusal of connecting carriers to receive said cars for points on the Mexican border; that the defendant was compelled to decline several shipments of corn which were tendered by plaintiffs. The denials contained in the second and third defenses of the answer were verified.

The defendant railway company at the trial objected to the introduction of any evidence under the allegations of the amended petition and each count thereof, on the ground that no cause of action against the defendant was stated therein. This objection was over-

ruled. A verdict was returned for plaintiff, and judgment rendered thereon.

*T. N. Sedgwick*, for plaintiff in error.

*Ellis, Reed, Cook & Ellis*, and *Sheridan & Sheridan*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: It does not appear from the petition that there was any contract or agreement upon the part of the plaintiffs below with the railway company by which they bound themselves to ship the corn over the line of the Missouri, Kansas & Texas railway. While it is alleged that the agent, Donohue, promised and contracted on behalf of the railway company to transport this corn for the plaintiffs within a given time to Laredo, Tex., and that plaintiffs made contracts with the persons in Mexico upon the strength of the promise of Donohue, yet nowhere is it alleged that the plaintiffs agreed to furnish this corn to the Missouri, Kansas & Texas Railway Company for shipment. There are allegations in the petition to the effect that the plaintiffs below had various offers from persons in Mexico to purchase a certain quantity or kind of corn at a certain price per hundred pounds, delivered at Laredo, which place is on the border between the state of Texas and the republic of Mexico; that these propositions as they were received by the plaintiffs below were in each instance shown to Donohue, who, it is alleged, was the commercial agent of the company, with authority to contract for it and especially to make the contract with the plaintiffs for the transportation of the corn; that, upon receiving from Donohue assurances that the railway company would receive and ship the corn if the plaintiffs made

the contracts with the persons in Mexico, they closed the contracts with such persons and bound themselves to deliver at Laredo the amount of corn called for in each of the several causes of action, which represent as many contracts with persons in Mexico.

It is not contended by counsel for defendant in error that there is any express allegation in the petition to the effect that W. H. Harris & Co. bound themselves to ship the corn over the railway of defendant in error, but it is claimed that this is a fair inference to be drawn from the language used. While the allegations of the petition, when attacked by an objection to the introduction of evidence under it, will be construed liberally and will be held good unless there is a total omission to allege some material fact which is essential to plaintiffs' cause of action, yet it seems to us that an allegation of the important element of mutuality, which is the basis of all valid contracts, is wholly absent from the petition. It is probable that the pleader considered that he was pleading an undertaking on the part of the plaintiffs below, by the terms of the contract with Donohue, to ship the corn over the defendant's railway, but a careful reading of the petition convinces us that he wholly failed so to do. In the late case of *Woolsey v. Ryan*, 59 Kan. 601, 54 Pac. 664, this court, speaking through Chief Justice Doster, said:

"In all probability, the instrument was supposed to be binding upon both sides when it was signed, but we can give effect to the intention of the parties only through the words they employ. If they do not express themselves in intelligible language, the law cannot afford them relief. For illustrations of the rule which requires mutuality of engagement between parties to contracts, see *Davie v. Mining Co.*, 93 Mich. 491, 53 N. W. 625; *Vogel v. Pekoc*, 157 Ill. 339, 42 N.

E. 386; *Campbell v. Lambert*, 36 La. Ann. 35; *Turnpike v. Coy*, 13 Ohio St. 84; *Stensgaard v. Smith*, 43 Minn. 11, 44 N. W. 669."

The defendant in error contends that the petition was sufficient in the respect mentioned, it having alleged offers from persons in Mexico to buy corn from W. H. Harris & Co., which offers were laid before Donohue, with the amount, price, terms and all made known to him, and thereon he was requested to name a through rate from Kansas City to Laredo within the time fixed; that he offered, if plaintiffs would make the sale, to transport the corn for 25 cents per 100 pounds; that plaintiffs notified him that they would close the sale and ship the corn within the time; "that defendant thereupon, through its agent, orally contracted and agreed with plaintiffs to transport said quantity of grain promptly and as rapidly as tendered within the time so specified to said Laredo, Tex., at the rate of 25 cents per 100 pounds"; that plaintiffs thereupon closed a contract of sale.

The agreement places an obligation upon one of the parties to the contract only — the railway company. If W. H. Harris & Co. had refused to ship any corn over the road of the defendant after making the various oral contracts with Donahoe, and the railway company had sued them for a breach, could it be said that proof only of the facts set out in the petition would render W. H. Harris & Co. liable to the railway in damages for a failure to ship over the line of the plaintiff in error? From all that can be gathered from the pleading, plaintiffs below were at liberty to ship this corn over any other route from Kansas City to Laredo, and it appears from the evidence that there were two others. Nor can the doctrine of "express aider" cure the infirmities of the petition. The

answer, after alleging an impenetrable blockade and impossibility of sending more corn through, says: "This defendant was compelled to decline several shipments of corn which were tendered by plaintiffs, which refusal was made necessary," etc.   It is contended that this language in the answer remedies the defective allegations of the petition by invoking the doctrine of aider by answer.   The language above quoted falls far short of an admission that W. H. Harris & Co. were obligated to make all shipments of corn mentioned in the petition over the defendant's railway line.   The fact that they did ship a large quantity of corn over defendant's road, and that defendant was compelled afterward to decline several shipments of corn which were tendered by W. H. Harris & Co., does not imply that they were bound by contract to make all the shipments over the defendant's road.

The principle that mutuality is an essential element to the validity of contracts is well settled.

"It is a general principle of law of contracts, but not without exception, that an agreement entered into between parties competent to contract, in order to be binding, must be mutual; and this is especially so when the consideration consists of mutual promises. In such cases, if it appears that the one party never was bound on his part to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality." (*Wilkinson v. Heavenrich*, 58 Mich. 574, 26 N. W. 139.)

In *Tucker v. Wood*, 12 Johns. 190, it is said: "In contracts, where the promise of the one party is the consideration for the promise of the other, promises must be concurrent and obligatory upon both at the same time."   In Chitty on Contracts, 297, this language is used: "The agreement, as before observed,

28—60 KAN.

must in general be obligatory upon both parties. There are several cases satisfactorily establishing that if the one party never was bound on his part to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality.'' It is unnecessary to multiply authorities upon this well-established doctrine.

The defendant in error calls our attention to the evidence in the cause, which he claims shows a plain contract of agreement on the part of W. H. Harris & Co. to ship over the line of the Missouri, Kansas & Texas Railway Company. This evidence is contained in the affidavit made by Donohue before the action was brought, and was used in his cross-examination for the purpose of contradiction and impeachment. A large portion of this affidavit was of doubtful admissibility, and that part of it relating to the agreement of plaintiffs below to ship the grain over the line of the defendant railway within the time specified was not in contradiction of any statements made by the witness in direct examination. Whether this testimony was admissible or not becomes immaterial, however, in our view of the failure of the petition to allege such mutuality of contract as justified a recovery under it.

A number of exhibits written in Spanish were offered in evidence, containing orders for corn from persons and firms in Mexico named in the petition, addressed to the plaintiffs below and material to their case. These documents were translated by one Enrique Guerra, who made affidavit to each that he was a competent translator, could read and write both Spanish and English, and that he had translated the documents accurately and faithfully into the English language. Mr. Bagley, a witness for plaintiffs below, testified that he could converse in Spanish, that he had known

Senor Guerra five years, and that he could speak and write both English and Spanish, and had done so with the witness. The statute governing the admissibility of such evidence reads : '' Whenever any written evidence in a cause shall be in language other than the English, a written translation thereof, in the English language, made by a competent translator, and verified by his affidavit, may be read in evidence instead of the original, if such original be competent evidence.'' (Gen. Stat. 1889, ¶ 4477 ; Gen. Stat. 1897, ch. 97, § 21.) We do not think it is competent for the translator to establish his competency and qualifications for the work he has undertaken by his own affidavit. In making the translation he acts in the capacity of an expert, and his competency as such should be open to inquiry by the party against whom the translated documents are to be used as evidence. A cross-examination of the witness Guerra by the defendant below would have tested his ability as a translator. Nor was it competent for the witness Bagley to give his opinion as to the qualifications of Guerra. The statute contemplates that a witness acting as a translator should not prove his competency by his own *ex parte* affidavit, but that he should be brought before the court and examined as a witness or his deposition taken, in either case affording to the opposite party the opportunity of cross-examination.

It is unnecessary to consider other grounds of error assigned. We will say, however, in view of another trial of this cause, that the authority of the agent Donohue to make the contracts was in our opinion sufficiently established. The instructions given him by Mr. J. Waldo, the general traffic manager of the railway company, to the effect that he might do whatever was necessary to get the south-bound business

from W. H. Harris & Co., was sufficient to authorize Donohue to make contracts. The claim that the contracts of shipment were in violation of the interstate commerce law of the United States cannot be considered. Such defense, to be available, must be pleaded. (Ray, Freight Carriers, 707; *Association v. Delano*, 108 Mo. 217, 18 S. W. 1101.) Nor was there any evidence offered by the defendant below to the effect that W. H. Harris & Co. knew that a higher freight-rate was charged for a shorter distance than Kansas City to Laredo from points in Kansas.

The judgment of the court below will be reversed, and a new trial ordered.