## AMERICAN STEEL AND WIRE COMPANY v. A. S. COPELAND ET AL.

### (Filed 9 October, 1912.)

**1. Contracts of Sale—Vendor and Vendee—Parol Evidence—Written Order—Statute of Frauds.**

The defendant contended the contract was in parol and the plaintiff that it was in writing: *Held*, competent to introduce evidence of the terms of the contract, and that the rule excluding evidence on the ground that it added to or varied a written order was not applicable.

**2. Principal and Agent—Declarations—Evidence of Agent—Contradictions—Discretion of Court.**

The declarations of agent as to an alleged contract made by him for his principal after the event are incompetent as evidence, but may be admitted by the trial judge, in his discretion, subject to the condition that they be thereafter made competent; and in this case, they are held competent in contradiction of the evidence of the agent as to the terms of the contract.

**3. Contracts of Sale—Breach—Damages Remote—Continued Offer to Sell—Loss of Profits—Certainty of Admeasurement.**

In an action upon a breach of contract of a manufacturer of wire fencing to furnish a supply merchant with a sufficient quantity of the fencing for his trade during a certain period, it appeared that several car-loads of the wire were necessary for the purpose, and that the vendor had undertaken to send out and distribute among the vendee's customers, according to a list furnished. circulars advertising the merits of that particular fencing; that the vendee told vendor's agent that he would purchase only upon condition that he could get all he wanted; that in consequence of the transaction and the failure and refusal of the vendor to ship the second car-load, he had been prevented from obtaining his profits, in a certain sum, on sales he would otherwise have made in certain specified transactions: *Held,* (1) vendee was entitled to recover his profits so shown on the second car-load ordered, in any event, as the agreement constituted a continuing offer to sell before the withdrawal of the offer; (2) these profits were reasonably in the contemplation of the parties at the time of making the contract of sale, and the cost and selling price being fixed, were not difficult of ascertainment; and, *semble*, profits shown of this character could be recovered in the failure of the vendor to make further shipments embraced by the contract of sale.

APPEAL by plaintiff from *O. H. Allen, J.,* at June Term, 1912, of LENOIR.

This action was instituted to recover $610.94, as the purchase price of a car-load of wire shipped by the plaintiff to the defendants. The defendants admitted the purchase of the car of wire at the price named, and set up a counterclaim for damages in the sum of $650 for breach of contract by the plaintiff, under which they allege that the plaintiff agreed to furnish the defendant wire, which contract was entered into between the plaintiff and defendants on or about 21 June, 1910, and that the car-load of ·wire, for the purchase price of which the plaintiff was suing, represented only a portion of the wire which the plaintiff was to ship the defendants under the contract. The plaintiff denied the contract set out by the defendants.

The defendants offered evidence tending to prove that they were general farm supply merchants in the city of Kinston, North Carolina; that on or about 21 June, 1910, McKelcan, an agent and representative of the plaintiff company, approached the defendants for the purpose of selling them wire; that the defendants at this time were using another brand of wire and had a large demand for wire fencing from their customers; that B. W. Canady & Son were handling the plaintiff's wire in Kinston, and on this account McKelcan stated to them that he could not ship them wire to Kinston, but would ship wire to Graingers, which is near Kinston, from which point the defendants could have it sent to Kinston; that the defendants stated to McKelcan that they would not care to purchase any wire from the plaintiff unless they could get all they wanted; that they would sell a car-load a month, or at least five or six car-loads a year, and probably more; that McKelcan thereupon agreed that the plaintiff would furnish the defendants all the wire that they wanted for their trade, and in addition thereto would help advertise this wire all through the different counties, and guaranteed to the defendants to furnish them all the wire that they would require; that in pursuance thereof, the defendants and the plaintiff's agent sent the order for the one car, for the purchase price of which this action is brought;

that upon the request of the said McKelcan, the defendants furnished the plaintiff with the mailing list of their customers, containing about five hundred names, to whom it appears the plaintiff wrote circular-letters, which read in part as follows: "In order that you and others in your vicinity may see this fence and look into its good qualities, we have arranged that a liberal stock be carried by Copeland Brothers, Kinston, North Carolina, who will be glad to give you one of our complete catalogues"; that the plaintiff also sent the defendants an electrotype containing a photograph of the wire fences, which the defendants used in advertising in the *Kinston Free Press* at the rate of $25 per month; that the one car-load arrived and was sold by the defendants in about two or three weeks, and the second car ordered under the contract; and the plaintiff declined to ship the second car; that the defendants were out of wire about six weeks, during which time they could have sold a car at a profit of $300 per car. This was based upon the demands made by their customers for the wire. One hundred and twenty half rolls of wire is a minimum car-load lot; that the defendants could have bought some lighter wire, made by different people than the plaintiff, from L. Harvey & Son, at 5 per cent discount, but not the same kind or grade of wire which the plaintiff should have furnished the defendants and which they were advertising as being sold by the defendants; but they could not have purchased from their competitors, B. W. Canady & Son, wire at any such per cent advance.

The plaintiff, by the depositions of McKelcan and Dietrich, denied that there was any contract except the order for the one car of wire, and further attempted to deny that the agent had any authority to bind the plaintiff, although Dietrich stated that McKelcan's authority "was such as is generally given to a traveling salesman."

Exception was taken by the plaintiff to the admission of the evidence tending to prove that the agent of the plaintiff agreed to furnish all the wire the defendants wanted, upon the ground that the order for the car, which was shipped, constituted the contract, and that parol evidence was inadmissible to add to or vary it.

The defendants were permitted to prove that they had a conversation with the agent of the plaintiff, McKelcan, after the refusal to ship the second car, and that he admitted that he agreed to furnish all the wire the defendants wanted, and the plaintiff excepted.

The plaintiff introduced the deposition of McKelcan, in which he denied the contract as contended for by the defendants.

His Honor charged the jury on the question of damages as follows: "You will confine the question of damages to the inquiry as to whether there was an agreement made with the defendants by the agent, approved by the plaintiff and ratified by them, by their conduct, correspondence, and if they refused to comply with the agreement, and by reason of that refusal the defendants were damaged, and if so, in what amount they were damaged; that damages would have to be confined to such evidence as would enable you to ascertain reasonably the amount; that is to say, the defendants could not recover for what we call speculative damages. He could not calculate that he might have sold large amounts of wire and make estimates upon that, but he would have to base his estimates as to what he could have sold upon the demands for wire made upon him by his customers, and such expenses as he went to preparatory to carrying out the agreement, like the advertising. The defendants cannot recover in their counterclaim more than they can show they have been damaged by advertising and by failure to be able to supply the actual demands that were made upon them, and it was their duty to exercise care in restricting the amount of loss, if any, as much as possible; and as I have already said, the defendants cannot recover speculative profits, nor remote profits for damage to his business, if any. I believe he is making no claim for that; nor can he recover for possible or probable profit on sales of goods, except such sales as he shows to the jury he could have made by reason of demands that were made upon them by their customers. And the burden is upon the defendants to prove by the greater weight of the evidence that they are damaged and the amount of the damages." Plaintiff excepted.

The evidence as to damages was as to the loss of profits on one car of wire, and the jury awarded the amount claimed, $300, and from the judgment rendered, the plaintiff appealed.

*G. G. Moore for plaintiff.*

*Rouse & Land for defendants.*

ALLEN, J. The contention of the defendants is that the entire contract between them and the plaintiff was in parol, and that the order given for the car of wire, which was shipped, was in part execution of the contract, while the plaintiff contends that there was no agreement outside of the written order.

It was competent for both parties to introduce evidence in support of their contentions, and the rule excluding parol evidence which adds to or varies a written contract has no application.

The evidence of the defendants as to the conversation with the agent of the plaintiff was not strictly competent at the time it was offered, because it was a declaration after the event; but it appears that the deposition of the agent was on file, in which he denied the contract as contended for by the defendants, and that this deposition was introduced by the plaintiff, and the declaration of the agent was competent to contradict his evidence contained in the deposition.

His Honor could have permitted the introduction of the evidence out of its order, in the exercise of his discretion; and if his ruling was not on this ground, it is not reversible error, because the evidence was made competent by the introduction of the deposition.

This brings us to the consideration of the principal question debated between counsel, and that is, whether the agreement, as proven by the defendants, is wanting in mutuality or is so uncertain that it cannot be enforced.

We have said at this term, in *Elks v. Insurance Co., post,* 619, that a contract must be definite and certain, or capable of being made so; and the plaintiff contends that under this rule an agreement on its part, if made, to furnish all the wire the defendants might want, would be too indefinite to create an enforcible contract.

The authorities are not in harmony on this question; some sustaining in whole or in part the contention of the plaintiff, as in *Bailey v. Austrian,* 19 Minn., 535; *Tarbox v. Gotzion,* 20 Minn., 139; *Drake v. Vorse,* 52 Iowa, 419; *R. R. v. Bagley,* 60 Kan., 425; *Harrison v. L. Co.,* 45 S. E. R., 731 (Ga.); while others hold to the contrary view.

A contract was sustained in *Furniture Co. v. Manufacturing Co.,* 110 Ill., 427, to supply all the pig iron which the party should need, use, or consume in his business; in *Cooper v. Wheel Co.,* 94 Mich., 272, to furnish such quantity of wheels as he may require during a certain season; in *Smith v. Moore,* 20 La. Ann., 220, to furnish all the ice they might require for two hotels for five years; in *L. Co. v. Coal Co.,* 160 Ill., 85, to furnish the coal company its requirements of coal for a certain season; in *Doiley v. Can Co.,* 128 Mich., 591, to furnish all the tin cans that plaintiff might use in his factory for a stated time; and in *Wells v. Alexander,* 130 N. Y., 642, to furnish the coal needed for steamers during one year.

These authorities would justify us in sustaining the agreement as a valid contract, binding between the parties, at the time the agreement was made; but it is not necessary to go so far, as it appears that after the shipment of one car, the defendants ordered another, which the plaintiff refused to deliver, and the evidence as to the amount of damages was directed to the loss of sales from this car, and his Honor restricted the recovery to the profits that would have been made on sales to customers who applied for the wire and could not get it.

In any event, the agreement constituted a continuing offer to sell, on the part of the plaintiff, which when accepted, before the withdrawal of the offer, became effective as a contract, and the order for the second car was an acceptance of the offer *pro tanto.*

This was decided in *R. R. v. Witham,* 9 C. P., 19, and is approved in Clark on Contracts, 119-120; 1 Page Con., sec. 307; Bish. Con., sec. 78. The case from the Court of Common Pleas is summarized in Bishop, *supra,* as follows: "In one case parties agreed that one of them should supply the other during a designated period with certain stores, as the latter might order.

He made an order, which was filled; then made another, which was declined; and on suit brought the defendant rested his case on the lack of mutuality in the contract, which, he contended, rendered it void. Plainly it stood, in law, as a mere continuing offer by the defendant, but, when the plaintiff made an order, he thereby accepted the offer to the extent of the order, and it was too late for the other to recede. So judgment went for the plaintiff."

We are also of opinion that the defendants were entitled to recover profits.

This question has been discussed so clearly and elaborately by *Justice Walker* in *Machine Co. v. Tobacco Co.*, 141 N. C., 284, and by *Justice Hoke* in *Wilkinson v. Dunbar,* 149 N. C., 22, in which the leading authorities are reviewed, that we need do no more than refer to those cases.

In the first the Court says: "Generally speaking, the amount that would have been received if the contract had been kept, and which will completely indemnify the injured party, is the true measure of damages for its breach. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract—that is, such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed. It is the rule last stated which principally raises the doubt as to whether profits of the future should be included in the estimate of damages. They may be necessary to completely indemnify the injured party, and they may also answer the other requirement, in that the loss of them may naturally be expected to proximately result from a breach of the contract; but there still remains another important element to be considered, and that is whether there is any reliable standard by which they can be ascertained, for we have seen that the damages must be certain, and this certainty which is required does not refer solely to their amount, but also to the question whether they will result at all from the breach. It is clear that whenever profits are rejected as an item in the calculation of damages, it is be-

cause they are subject to too many contingencies and are dependent upon the fluctuations of markets and the chances of business to constitute a safe criterion for an estimate of damages. . . . It will be seen, therefore, that the earlier rule which excluded profits altogether, as an element of damages, as being in their very nature too uncertain to be considered (Hale on Damages, 72), has been modified so as to permit their inclusion in the assessment if they are proximate and certain." And in the second: "It is well established that where there has been definite and absolute breach of a contract which is single and entire, that all damages, both present and prospective, suffered by the injured party, may and usually must be recovered in one and the same action, and when prospective damages are allowed, they must be such as were in reasonable contemplation of the parties, and capable of being ascertained with a reasonable degree of certainty. This requirement as to the certainty of damages recoverable is frequently said to exclude the idea of profits, but this statement must be understood to refer to the profits expected by reason of collateral engagements of the parties, or the profits of a going concern to arise from current sales and bargains which are yet to be made, and dependent, to a great extent, on the uncertainty of trade and fluctuations of the market. . . . But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties stand upon a different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement. The parties may indeed have entertained different opinions concerning the advantages of the bargain, each supposing and believing that he had the best of it; but this is mere matter of judgment going to the formation of the contract, for which each has shown himself willing to take the responsibility, and must, therefore, abide the hazard. Such being the relative position of the contracting

parties, it is difficult to comprehend why, in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages."

In the case before us profits were within the contemplation of the parties. The defendants were merchants and supplied their customers with wire; they had five hundred customers and sent their names to the plaintiff; they were not buying for their own use, but for sale, and the plaintiff knew of these facts.

Nor were the profits difficult of ascertainment, as the cost and selling prices were fixed.

It is not at all certain that his Honor, on all the facts, would not have been warranted in submitting to the jury the question of damages on the whole agreement, but as he did not do so, and limited the right of recovery, we find no error of which the plaintiffs can complain.

No error.