WICKHAM & BURTON COAL COMPANY, Appellant, v.
FARMERS LUMBER COMPANY, Appellee.

CONTRACTS: **Want of Mutuality.** An agreement relative to the sale and purchase of a commodity at a specified price and for a specified time, which leaves the purchaser with the option to purchase much or to purchase little or not to purchase at all, is void for want of mutuality, and mutuality is not supplied by the act of the seller in complying with *some* of the orders. So held where the agreement was to deliver such carload shipments of coal "*as defendant would want to purchase from plaintiff.*"

*Appeal from Webster District Court.*—R. M. WRIGHT, Judge.

OCTOBER 26, 1920.

COUNTERCLAIM asserting that damages were due from plaintiff because of a contract made between plaintiff and defendant. A demurrer to the counterclaim was overruled. Hence this appeal.—*Reversed.*

*Frank Maher,* for appellant.

*E. H. Johnson,* for appellee.

SALINGER, J.—I.   The counterclaim alleges that, about August 18, 1916, defendant, through an agent, entered into an oral agreement "whereby plaintiff agreed to furnish and to deliver to defendant orders given them" for carload shipments of coal from defendant F. O. B. mines, "to be shipped to defendant at such railroad yard stations as defendant might direct, at the price of $1.50 a ton on all orders up to September 1, 1916, and $1.65 a ton on all orders from then to April 1, 1917." It is further alleged that "said coal ordered would be and consist" of what was known as plaintiff's Paradise 6″ lump, 6x3″ egg, or 3x2″ nut coal. It is next alleged that defendant has, for several years last past, been engaged in owning and operating what is commonly known as a line of lumber yards, located at different railroad station points tributary to Fort Dodge, where defendant has its principal place of business; that, at these several lumber yards, among other merchandise and commodities the defendant handles coal in carload lots, with purpose of selling the same at retail to its patrons.

Then comes an allegation that the agent made oral agreement "that plaintiff would furnish unto defendant coal in carload lots; that defendant would want to purchase from plaintiff" on stated terms, with character of the coal described; and that the oral contract was confirmed by the letter Exhibit 1. It is of date August 21, 1916, and recites that plaintiff is in receipt of a letter from their agent, "asking us to name you a price [repeating the price and coal description found in the counterclaim]. Although this is a very low price, our agent, Mr. Spalding, has recommended that we quote you this price and we hereby confirm it.   Any orders received between now and September 1st are to be shipped at $1.50.   We would like to have a letter from you accepting these prices and if this is satisfactory will consider same as a contract."

On August 26, 1916, the defendant responded:

"We have your favor of the 21st accepting our order for coal for shipment to March 31, 1917."

The basis of the counterclaim, so far as damages are concerned, is the allegation that a stated amount of coal had to be purchased by defendant in the open market at a greater than the contract price, and that, therefore, there is due the defendant from the plaintiff the sum of $3,090.

The demurrer asserts that the alleged contract is "void for failure of mutuality and certainty;" is void because there is no consideration between the parties; because it appears affirmatively that the offer was simply an offer on part of plaintiff, which might be accepted by giving an order until such time as it was actually withdrawn or expired by limitation, each order and acceptance of a carload lot constituting a separate and distinct contract; and void because the agreement could not be enforced by the plaintiff on any certain or specified amount of tonnage, or for the payment of any specified tonnage.

II. The demurrer makes, in effect, three assertions: (a) that the arrangement between the parties is void for uncertainty; (b) that it lacks consideration; (c) that it lacks mutuality of obligation. We have given the argument and the citations on the first two propositions full consideration. But we conclude these first two are of no importance if mutuality is wanting.

The authorities that deal with uncertainty and indefiniteness hold, in effect, that whatsoever is ascertainable with reasonable effort is sufficiently certain to be enforced, if there be no objection to enforcement other than uncertainty. Now, grant that it was not difficult to ascertain how much coal defendant would sell in the time stated in the negotiations, how does that help, if there was no obligation on one side to sell, or on part of the other to buy? If the defendant was under no binding obligation to buy of plaintiff, it does not matter how much defendant could sell. In fewer words, though an offer to sell a specified number of tons of coal is not uncertain, or lacking in definiteness, such offer is no contract, unless the other party agrees to receive what is offered. In still fewer words, while a writing may be so uncertain as not to be enforcible,

a perfectly definite writing may still be unenforcible be-
cause there is no mutuality of obligation.

## 2-a

And the asserted lack of consideration is bottomed on
the claim that mutuality is lacking.  Appellant does not
deny that a promise may be a consideration for a promise.
Its position is that this is so only of an enforcible promise.
That is the law.   If, from lack of mutuality, the promise
is not binding, it cannot form a consideration. *Bailey v.
Austrian*, 19 Minn. 535.   To like effect is *Walsh v. Myers*,
92 Wis. 397 (66 N. W. 250), which holds there was con-
sideration, because there were mutual promises which were
enforcible.   And so of *Young Co. v. Springer*, 113 Minn.
382 (129 N. W. 773); *Hazlehurst Lbr. Co. v. Mercantile
L. & S. Co.*, 166 Fed. 191; *Chicago & G. E. R. Co. v. Dane*,
43 N. Y. 240, at 242.   There is no consideration by promises
which lack mutuality.   *Cold Blast Trans. Co. v. Kansas
City Bolt Co.*, (C. C. A.) 114 Fed. 77, at 81, 82; *Campbell
v. Lambert & Co.*, 36 La. Ann. 35.   In the last-named case,
it is said that, while a promise may be a good consideration
for another promise, this is not so "unless there is an
absolute mutuality of engagement, so that each party has
the right at once to hold the other to a positive agreement"
(citing 1 Parsons on Contracts 448). To the same effect
are *Utica & S. R. Co. v. Brinckerhoff*, 21 Wend. (N. Y.)
139; *Missouri, K. & T. R. Co. v. Bagley*, 60 Kans. 424 (56
Pac. 759, at 762); *Tucker v. Woods*, 12 Johns. (N. Y.) 190;
*Corbitt & Macleay v. Salem Gaslight Co.*, 6 Ore. 405; and
1 Chitty on Contracts (16th Ed.) 297.

The question of first importance, then, is whether there
is a lack of mutuality.   In the last analysis, the counter-
claim is based on the allegation that plaintiff undertook to
furnish defendant such described coal "as defendant would
want to purchase from plaintiff."   The defendant never
"accepted."   Indeed, it is its position that it gave orders,
and that plaintiff did the accepting.   But concede, for argu-

ment's sake, that defendant did accept. What was the acceptance? At the utmost, it was a consent that plaintiff might ship it such coal as defendant "would want to purchase from plaintiff." What *obligation* did this fasten upon defendant? It did not bind itself to buy all it could sell. It did not bind itself to buy of plaintiff only. It merely "agreed" to buy what it pleased. It may have been ascertainable how much it would need to buy of someone. But there was no undertaking to buy that much, or, indeed, any specified amount of coal of plaintiff. The situation is well stated in some of the cases. In *Crane v. Crane & Co.*, (C. C. A.) 105 Fed. 869, at 872, it is put thus:

"Should the contract under discussion be upheld, the plaintiffs in error would be held to occupy this advantageous situation: If the price of dock oak lumber rose, they would, by that much, increase their ratio of profits, and probably, coming into a situation to outbid competitors, increase, also, the quantum of orders. If, on the other hand, prices fell below the range of profits, the orders could be wholly discontinued. On the contrary, the situation of the defendant in error would be this: Should prices fall, it could not compel the plaintiffs in error to give further orders; but, should prices rise, the orders sent in would be compulsory, and the loss measured, both by the increase of the ratio of profits, and the probable increase of the quantum of orders."

In *American Cotton Oil Co. v. Kirk*, 68 Fed. 791, 793, it is said:

"If the market price of oil should fall below the contract price, then, according to their contention as to the terms of the contract, the plaintiffs could purchase their supply of oil elsewhere, and at the lower price, resorting to the contract when, and only when, the price stated was lower than the market price,—and this without respect to time. Such a contract is one-sided, and without mutuality."

The "contract" on part of appellee is to buy if it pleased, when it pleased, to buy if it thought it advantageous, to buy much, little, or not at all, as it thought best.

A contract of sale is mutual where it contains an agreement to sell on the one side, and an agreement to purchase on the other. But it is not mutual where there is an obligation to sell, but no obligation to purchase, or an obligation to purchase, but no obligation to sell. 13 Corpus Juris 339. There is no mutuality or enforcibility where the agreement is that, on 60 days' notice, either party might cancel same "for good cause." *Cummer v. Butts,* 40 Mich. 322. A provision that it is understood the purchase of apples commences "as soon as it is deemed advisable by both parties to this contract, when apples can be purchased in sufficient quantities to insure getting a carload in a reasonable length of time, not to exceed three days on fall apples," lacks mutuality. This, because no party is compelled to deem anything advisable, and the courts cannot deem it for them. *Woolsey v. Ryan,* 59 Kans. 601 (54 Pac. 664). There is such uncertainty as to destroy mutuality, where the obligation to take is conditioned upon being "as long as we can make it pay." *Davie v. Lumberman's Min. Co.,* 93 Mich. 491 (53 N. W. 625). It is said that, under such an agreement, plaintiffs must be presumed to be the sole judges of whether it would or would not pay them to do the work, and of how long they should continue it; and that the defendant has no voice on whether or not plaintiffs could make it pay, and no right to say in what manner they should conduct the work, in order to make it pay.

Where one party agrees to cut for the other hay "not to exceed 200 tons," there is lack of mutuality, because the offerant was not bound to deliver any particular quantity of hay, and could cut as little as he pleased. *Houston & T. C. R. Co. v. Mitchell,* 38 Tex. 85, at 86. So where a defendant who binds himself to receive and pay for all the ties plaintiff could produce and ship at a stated price between stated dates. As to this, it was held mutuality was lacking, because there was no enforcible duty to deliver any ties. *Hazlehurst Lbr. Co. v. Mercantile L. & S. Co.,* 166 Fed. 191. And so of an offer to receive and transport railroad iron, not to exceed a stated number of tons, dur-

ing specified periods, and at a specified rate per ton. As to this, it was held that, though plaintiff answered, assenting to the proposal, there was still no contract, because there was no agreement on his part that he would deliver any iron for transportation. *Chicago & G. E. R. Co. v. Dane,* 43 N. Y. 240; *Hoffman v. Maffioli,* 104 Wis. 630 (80 N. W. 1032, at 1034). An agreement to purchase all that the manufacturer desires to sell at a specified price is void. 13 Corpus Juris 340. A written proposition to buy a stated quantity of coal at a stated price is not enforcible, because there is no corresponding obligation on the other to sell the coal at said price. *Corbitt & Macleay v. Salem Gaslight Co.,* 6 Ore. 405.

No contract is created by a willingness to ship such gauge glasses as the other "might order." *Ashcroft v. Butterworth,* 136 Mass. 511, 513. Nor by an engagement to deliver at a stated price "as many grapes as he (the other party) should wish." *Keller v. Ybarra,* 3 Cal. 147. A so-called contract by which one engages to deliver to the other such quantities of coal as the latter may require during the year, up to a specified limit, at a specified price, but containing no engagement on part of the buyer to take or pay for any of the coal, is not enforcible against the promisor. *Campbell v. Lambert & Co.* 36 La. Ann. 35. So of an agreement by one party to furnish to the former all the oak wood that the other "would require for their trade in the Chicago market during the year 1897," at stated prices. *Crane v. Crane & Co.,* (C. C. A.) 105 Fed. 869, at 871. And so an engagement by which one party engages to deliver to the other such quantities of coal as the latter may require during the year, "to the extent of 60,000 barrels, with privileges of 20,000 more," at a stipulated price, does not work an obligation on part of the other to take or pay for any stipulated quantity, and is, therefore, a *nudum pactum. Campbell v. Lambert & Co.,* 36 La. Ann. 35. Where plaintiff offers to deliver stone "in such quantities as may be desired," and the other party accepts this without qualification, and without making

reference to any existing contract for using the stone, there is no mutuality, because the defendant was not bound to desire any stone. *Hoffman v. Maffioli,* 104 Wis. 630 (80 N. W. 1032). To same effect is *American Cotton Oil Co. v. Kirk,* 68 Fed. 791, 793.

A contract to sell personal property is void for want of mutuality, if the quantity to be delivered is conditioned entirely on the will, wish, or want of the buyer. 13 Corpus Juris 339; *Cold Blast Trans. Co. v. Kansas City Bolt Co.,* (C. C. A.) 114 Fed. 77. So of an agreement to supply all pig iron wanted by defendants in their business between stated dates, at specified prices, even though the other party promised to purchase such iron. The argument advanced is that the buyer did not engage "to want any quantity whatever," nor even agree to continue in their business. *Bailey v. Austrian,* 19 Minn. 535. It is said in *Hickey v. O'Brien,* 123 Mich. 611 (82 N. W. 241, at 242), that, in *National Furnace Co. v. Keystone Mfg. Co.,* 110 Ill. 427, the case of *Bailey v. Austrian* is distinguished by pointing out that, in the *Bailey* case, stress is laid on the word "want;" while in the Illinois case, the plaintiff agreed to sell to defendant all the iron "needed" in its business during the three ensuing years at $22.35 a ton, and the defendant agreed to take its year's supply at that price. We are unable to find any substantial difference between an "agreement" to buy what one might "want" and what one might "need." Be that as it may, in the case at bar the language was, "would want to purchase." And the *Austrian* case is well supported in authority. An agreement to receive and pay for such beer as the plaintiff might, from time to time, want from the defendant, lacks binding force for want of mutuality, though plaintiff agreed to sell all the beer of specified brands which plaintiff should order at prices to be agreed on. *Teipel v. Meyer,* 106 Wis. 41 (81 N. W. 982). To like effect is *Gipps Brewing Co. v. De France,* 91 Iowa 108. And see *Hoffman v. Maffioli,* 104 Wis. 630 (80 N. W. 1032, at 1035); *Tarbox v. Gotzian,* 20 Minn. 139; *Stensgaard v. Smith,* 43 Minn. 11 (44 N. W.

669) ; *Dayton, W. V. & X. Turnpike Co. v. Coy*, 13 Ohio St. 84; *Utica & S. R. Co. v. Brinckerhoff*, 21 Wend. (N. Y.) 139.

Indeed, in *American Steel & W. Co. v. Copeland*, 159 N. C. 556 (75 S. E. 1002, at 1004), and in *Hickey v. O'Brien*, 123 Mich. 611 (82 N. W. 241), our case of *Drake v. Vorse*, 52 Iowa 417, is construed to support the rule in *Bailey v. Austrian*, 19 Minn. 535, to wit: That there is no mutuality on an offer to supply all the other wants, because he is under no engagement to want any quantity whatever. Now, while we are not prepared to say that the rating which these cases have given to *Drake v. Vorse* can be accepted, it is certainly true that, at the least, it leans toward supporting appellant. Drake and Vorse, on January 15, 1873, signed the following:

"I hereby agree to make all the school seat castings that 'A. S. Vorse may want during the year 1873, at 6 cents per pound, except ink well covers, and them at 3 cents each, deliverable on the cars in Eddyville, Iowa, payments cash on delivery."

All that seems to be *decided* as to this is that, where Vorse entered into a .partnership after this paper was signed, it should not be construed that this contract precluded entering into a partnership during the year 1873, or that the writing would become obligatory upon the partnership. But the course of the argument leans strongly to the reasoning of cases like *Bailey v. Austrian*. For we said:

"It binds the plaintiff to make what castings the defendant may want. It does not expressly bind the defendant to anything except to pay in cash on delivery the prices specified."

Then the case proceeds *pro arguendo* to the decision as we have before stated. The concluding argument is this:

"He did discontinue business upon his individual account. After that, he did not individually want or need any castings, and, as the firm was not bound to take any, we do not think that the defendant became liable."

So the case seems to amount to an argumentative holding that the contract lacked mutuality.

Both reason and the very great weight of authority work that the "contract" in review was no contract, because defendant was under no binding obligation.

III.   Three cars of coal were shipped and received. Upon this, appellee urges that thereby the so-called contract was completed, and made mutual. Part performance was ineffectual in *Hoffman v. Maffioli,* 104 Wis. 630 (80 N. W. 1032), to found a case as for breach of contract on refusal to ship more. The same is held in *Crane v. Crane & Co.,* (C. C. A.) 105 Fed. 869, at 871; *Cold Blast Trans. Co. v. Kansas City Bolt Co.,* (C. C. A.) 114 Fed. 77, at 82; *Teipel v. Meyer,* 106 Wis. 41 (81 N. W. 982); *Campbell v. Lambert & Co.,* 36 La. Ann. 35; *Utica & S. R. Co. v. Brinckerhoff,* 21 Wend. (N. Y.) 139; *Missouri, K. & T. R. Co. v. Bagley,* 60 Kans. 424 (56 Pac. 759, at 762); and *Chicago & G. E. R. Co. v. Dane,* 43 N. Y. 240, 243.

If there never was a *contract* to ship anything, that is still the situation when a contract to ship what has not yet been shipped, is asserted as the basis of an action. As said in *Cold Blast Trans. Co. v. Kansas City Bolt Co.,* (C. C. A.) 114 Fed. 77, at 80, even though there had been some shipments, there was still no consideration and no mutuality in the contract as to any articles which defendant had not ordered, or which plaintiff had not delivered, and, therefore, the refusal of plaintiff to honor the orders of defendants was no breach of any valid contract, and formed no legal cause of action whereon to base a counterclaim. It was further said:

"As to all undelivered articles, that defect still inheres in the agreement. The plaintiff is not bound to deliver, nor the defendant to take and pay for, any articles that have not been delivered [that is to say, so much as has not been performed still rests upon an agreement which is not enforcible, and for the refusal to honor which there can be no recovery].   *  *  *   The defendant never agreed to order or to pay for any quantity of these undelivered

articles.   If it had refused to order and take them, no
action could have been maintained for its failure, because
no court could have determined what amount it was re-
quired to take."

It is thus stated in 13 Corpus Juris 341:

"Accepted orders for goods under contracts void within
these rules constitute sales of the goods thus ordered at
the price named in the contracts, but they do not validate
the agreements as to articles which the one refuses to pur-
chase, or the other refuses to sell or to deliver, under the
void contracts, because neither party is bound to take or
deliver any amount or quantity of these articles there-
under."

Defendant alleges further that, by reason of the con-
duct of plaintiff in furnishing defendant two carloads at
$1.50 per ton under the contract terms, plaintiff is now
estopped from claiming there was no binding contract be-
tween the parties for furnishing coal to defendant under
the contract contended for by defendant.   But the claimed
estoppel is no broader than the claimed breach of a con-
tract which is no contract.

IV.   Cases relied on by appellee do not, on careful con-
sideration, militate with what we have declared.   All that
*Keller v. Ybarru*, 3 Cal. 147, holds is that, when one party
offers to sell as much as the other wishes, there is a con-
tract, after the other declares what quantity he will take.
In *Cooper v. Lansing Wheel Co.*, 94 Mich. 272 (54 N. W.
39), the defendant entered the following order:

"Owosso, Mich., Dec. 16, 1889.

"Mess. Lansing Wheel Co.,

"Lansing, Mich.

"Gentlemen:

"Please enter our order for what wheels we may want
during the season of 1890, at following prices and terms:
B, $6.00; C, $5.00; D, $4.00—per set, F. O. B. Owosso, 30
days.   All the wheels to be good stock, and smooth.   Should
you want a few D wheels to be extra nice stock, all selected

white, they are to be furnished at same price, not to exceed 10 set in a 100.

"Very respectfully yours,

"Owosso Cart Co."

Upon receipt of this instrument, defendant indorsed thereon: "Accepted. Lansing Wheel Co." It is held there was a contract after shipment at the specified prices.

In *American Steel & W. Co. v. Copeland,* 159 N. C. 556 (75 S. E. 1002), it is ruled that an agreement by a manufacturer to furnish a dealer all the wire he needed for his trade constitutes a continuing offer on the part of the company to sell, which, when accepted *pro tanto* by an order before withdrawal of the offer, becomes effective as a contract. The facts distinguish *McCall Co. v. Icks,* 107 Wis. 232 (83 N. W. 300). In *National Furnace Co. v. Keystone Mfg. Co.,* 110 Ill. 427, and *Smith & Co. v. Morse & Co.,* 20 La. Ann. 220, there was what is indubitably a mutual promise. Of course, we are not concerned with the cases wherein it is plain that the court enforced the agreement by justifiably holding that, while certain things were not expressed, there was an affirmative agreement by necessary implication. See *Cold Blast Trans. Co. v. Kansas City Bolt Co.,* (C. C. A.) 114 Fed. 77; *Shadbolt & B. I. Co. v. Topliff,* 85 Wis. 513 (55 N. W. 854); *Minneapolis Mill Co. v. Goodnow,* 40 Minn. 497 (42 N. W. 356).

If any of these may be said to conflict with our conclusions, they are against the great weight of authority, and we decline to follow them.

The case of *Holtz v. Schmidt,* 59 N. Y. 253, is not relevant. It merely holds that, where there is an engagement to supply goods at prices represented to be the lowest made to any buyer, then, on proof that the same kind of goods were sold to another at lower prices than to complainant, he may recover, though either might have refused to deal. What is decided is that, having been induced to deal by such representation, the law will imply a promise to restore the money inequitably obtained by having exacted a price beyond said representation, and

that the payment is to be held as one made under a mistake of fact, and to have been received by the other with knowledge that it was not entitled to it.

The demurrer should have been sustained.—*Reversed*.

Weaver, C. J., Evans and Preston, JJ., concur.