No. 23,388.

G. G. RAILSBACK, *Appellee,* v. J. RAINES, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACTS—*"Unilateral Contract" is a Misnomer.* The phrase "unilateral contract" held to be a misnomer.
2. SAME. A contract being an agreement between two or more parties, it must of necessity be binding on both, hence, if binding on one party only, it cannot be a contract.
3. SAME—*Contract for Sale of Cattle—Mutually Binding.* The plaintiff and defendant signed the following paper:

"LANGDON, KANSAS, January 30, 1920.

"CONTRACT, by and between G. G. Railsback, party of the first part and J. Raines, party of the second part.

"Said G. G. Railsback, party of the first part agrees to sell 188 steers . . . on terms to-wit: Two carload on or before February 16, 1920, the balance on or before February 28, 1920. Thirty of lightest cattle to be weighed at $9.00 per cwt. Remainder at $11.00 per cwt. These cattle to be weighed early in morning without feed, weighed at Langdon stock yards. Said J. Raines to have the privilege of selecting the two loads that he takes on or before February 16th, not including the light cattle unless including all the 30 head before mentioned."

*Held,* a mutually binding contract.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed January 7, 1922. Affirmed.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellant.
*A. C: Malloy, R. C. Davis, Warren H. White,* and *E. T. Foote,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff recovered in an action on a contract which the defendant, who appeals, claims was not binding on him because not mutual. It was as follows:

"CONTRACT, by and between G. G. Railsback, party of the first part and J. Raines, party of the second part. Said G. G. Railsback, party of the first part agrees to sell 188 steers more or less to said J. Raines . . . on terms to-wit: Two carload on or before February 16, 1920, the balance on or before February 28, 1920. Thirty of lightest cattle to be weighed at $9.00 per cwt. Remainder at $11.00 per cwt. These cattle to be weighed early in the morning without feed, weighed at Langdon stock yards. Said J. Raines to have the privilege of selecting the two loads that he takes on or before February 16th, not including the light cattle unless including all the 30 head before mentioned.

(Signed)     G. G. RAILSBACK, .

J. RAINES."

The answer was a general denial, admitting the signing of the instrument, but alleging that it was not an entire contract because of a mutual mistake; that one of the provisions was left out, that Railsback was to feed the cattle, until delivered, ensilage out of plaintiff's silos, "and out of which plaintiff had been feeding said cattle before said contract." The defendant alleged that such condition was a part of the agreement and was intended to be incorporated in the written instrument, and that it was left out by mutual mistake. It was further alleged that proper ensilage was not fed, and that "by reason of plaintiff's failure to comply with the terms of said contract, and feed the said cattle the ensilage above referred to plaintiff breached said contract, and defendant was under no obligation to take said cattle." The plaintiff demurred to the opening statement, and the defendant's attorney insisted that the plaintiff's petition did not state a cause of action. After some argument counsel said if the petition did not state a cause of action he wanted to amend, and this was permitted, the amendment being to the effect that after the transaction the defendant adopted, affirmed and ratified the contract, and with this amendment the trial proceeded.

The plaintiff testified among other things that sometime after the transaction the defendant said he would not take the cattle—"he said I had breached the contract." Another witness testified that

the defendant told him he had bought some cattle and wanted to sell the light end, and mentioned the cattle at Railsback's and that he had these Railsback cattle. Another testified:

"Mr. Raines who had purchased these cattle from Mr. Railsback objected to this corn ensilage being fed at first, and I offered at that time to discontinue using this feed, but Mr. Raines said it would not be necessary and to go right on using this ensilage."

Another heard a conversation between the parties and Mr. Raines said to Mr. Railsback: "When I bought these cattle you were supposed to feed the ensilage in this silo."

The defendant himself testified:

"At the time I entered into this contract and agreed to buy these cattle I examined Mr. Railsback's ensilage and the feed that he had, and it was good ensilage composed of cane and corn mixed."

He further testified that the contract was drawn in a real-estate office and that—

"It was agreed when I bought the cattle that these cattle were to receive the feed from this silo and the rack was to be kept full of alfalfa hay and they were to be fed six sacks of cotton seed meal a day."

Counsel say in their brief, "there is nothing in the contract binding the appellant, J. Raines, it is purely and simply a proposition of G. G. Railsback." It is quite clear, however, from the evidence of the numerous witnesses that the defendant treated it as a contract, which indeed it was by its very terms. Its own language stated that Railsback agreed to sell—that Raines was to have the privilege of "selecting the two loads that he takes on or before February 16th," and he signed the instrument along with the plaintiff. *Railway Co. v. Bagley,* 60 Kan. 424, 56 Pac. 759, is cited as authority that the instrument was not a contract because not mutual. In that case Harris & Company contracted with the railway company that if the former would accept certain offers for the purchase of corn the railway company would transport it on certain terms. But Harris & Company did not agree to ship over this road and so no mutual obligation was entered into.

A contract is an agreement between two or more parties. Such a term as a unilateral contract is a misnomer. An offer is a mere opportunity given by one party to another to enter into a contract. When it is accepted the contract is complete.

"According to the Roman standards, a contract from the necessity of things is bilateral, one party agreeing to a particular thing in exchange for something

to be done by the other party. A mere unilateral engagement is not a contract." (Wharton on Contracts, § 493.)

"A distinctive name for a contract of this sort is undoubtedly to be desired; and the term 'unilateral' is satisfactory enough as far as derivation is concerned. The objection to it is that it is already used too much, with too many meanings." (1 Page on the Law of Contracts, 2 ed., § 51.)

The author then goes· on to enumerate divers things called unilateral contracts, and says: "As a result of these uses of the term it is said that a contract cannot be unilateral if it is really a contract." (§ 51.) Of course not. A unilateral contract is exactly as impossible as any other one-sided thing of two sides.

"The distinction between these two kinds of contracts [bilateral and unilateral] was fully recognized three hundred years ago, but lack of appropriate names caused the distinction and its consequences to be frequently overlooked in the later history of the law. Even to-day it is frequently said in the opinions of courts that both parties must be bound, or that there must be mutuality of obligation in a contract. Such statements are true only .of bilateral contracts. . . . A contract may give rise merely to an imperfectly enforceable obligation, but one which creates no obligation is a contradiction in terms. . . . Where there is no binding obligation, the transaction may be a unilateral promise or a unilateral offer, but it certainly cannot properly be called a unilateral contract." (1 Williston on Contracts, § 13. See, also, 6 R. C. L. 687; 9 Cyc. 245; 13 C. J. 263.)

Usually one who signs a written instrument which calls itself a contract may well be assumed to have intended to accept it. Here, the paper laboriously consumes one-fifth of its space in saying "CONTRACT, by and between G. G. Railsback, party of the first part and J. Raines party of the second part." Raines could not be a party of the second part to a contract which had only a party of the first part. When two parties agree that one is to sell cattle to the other, the latter to have the selection of those he takes on or before a certain date, this agreement is a contract, binding on both, and this is what perspicuously appears from the paper which these parties both signed.

The fact that it was frequently referred to by the defendant as a contract, even on the witness stand, is not a. necessary but a significant expression of what was in his mind when he signed his name to the paper.

The principles governing contracts are too simple and familiar to need the citation of authorities to support the ruling of the trial court.

The abstract indicates that the trial was before a jury, but no complaint is made touching rulings or instructions. In their brief counsel say the trial was without a jury. Hence, the assignment of error that the court refused to consider the testimony as to shrinkage must be disposed of by holding first, that such evidence was received and disputed, and second, it is presumed that the court gave it due consideration.

There is a good deal in the record to indicate that a falling market rather than objectionable feed actuated the defendant in refusing to take the cattle.

At any rate, no error appears in the record, and the judgment is affirmed.