GEORGE WOOLSEY *et al.* v. MATTHEW RYAN, JR., *et al.*

No. 10328.

EXECUTORY UNILATERAL CONTRACT—*not basis for action for damages against non-promising party.* In order to the enforcement of executory contracts they must be mutually binding upon both parties to them. Hence, an engagement by one person to perform services for another, in consideration of certain payments to be made and with certain funds and other assistance to be furnished by the other, but without a corresponding agreement with such other to accept the services and furnish the funds and assistance, is not enforceable by the promisor, by way of action for damages for non-employment, until its execution has been mutually entered upon and partially performed.

Error from Wyandotte District Court. Henry L. Alden, Judge. Opinion filed October 8, 1898. *Affirmed.*

*Mills; Smith & Hobbs*, for plaintiffs in error.

*Baker, Hook & Atwood* and *Hutchings & Keplinger*, for defendants in error.

DOSTER, C. J. The plaintiffs in error, as plaintiffs in the court below, sued the defendants in error, as defendants in the court below, for damages for violation of the following agreement:

"LEAVENWORTH, KAN., July 22, 1892.

"ARTICLE OF AGREEMENT.— It is agreed and understood between Ryan & Richardson, residents of Leavenworth City, Kansas, and G. Woolsey, P. F. Paul and W. W. Powell, of Bentonville, Arkansas, as follows: That G. Woolsey, W. W. Powell and P. F. Paul *agree to buy and pack*, in barrels to be furnished by Ryan & Richardson, sound, merchantable, handpicked, shipping apples, of fall and winter varieties, of the crop now growing in Benton and Washington Counties, Arkansas. Said apples to be purchased from growers in above-named counties with money to be furnished by Ryan & Richardson, and to

be by the said Woolsey, Powell and Paul carefully
packed in barrels, at the several railroad stations
running through said counties designated hereafter
by both parties concerned. The apples to be pur-
chased by P. F. Paul, W. W. Powell and G. Wool-
sey to be hand-picked and sound, merchantable
shipping apples. All labor and expense connected
with the purchase of said apples, and packing them
in barrels, to be at the expense of P. F. Paul, W. W.
Powell and G. Woolsey, and when so packed in bar-
rels, to be loaded F. O. B. cars at the several railroad
stations, where being packed for shipment to destina-
tion as directed by Ryan & Richardson. Said P. F.
Paul, W. W. Powell and G. Woolsey to keep a true
and accurate account of all moneys expended for ap-
ples, and to render an account at such times as may be
required by Ryan & Richardson, and to be responsi-
ble for the safe-keeping and outlay of such moneys,
except such as might be lost by bank failure or in
transit; all moneys so furnished by said Ryan & Rich-
ardson shall be by Woolsey, Powell and Paul kept en-
tirely separate and apart from their own funds.

"In consideration of services rendered by G. Wool-
sey, W. W. Powell and P. F. Paul, Ryan & Richard-
son agree to pay them thirty cents per standard barrel
of three bushels, for each and every barrel bought,
packed and placed on cars. It is understood that
Ryan & Richardson shall furnish barrels to pack the
apples in (the barrels to be made in warehouse at
Bentonville under control of and furnished by Wool-
sey, Powell and Paul free of charge), at other points
to be furnished by Ryan & Richardson and moneys to
purchase the apples, and Ryan & Richardson agree to
pay market price for apples, and to meet fair, honest and
reasonable competition in the purchase of said apples,
and the said Ryan & Richardson shall have the privi-
lege of having a representative present for the pur-
pose of determining the prices to be paid for daily
purchases. It is understood that the purchase of said
apples shall commence as soon as it is deemed advis-
able by both parties to this contract, when apples can
be purchased in sufficient quantities to insure getting
a car load in a reasonable length of time, not to ex-

ceed three days on fall apples. All contracts for apples made prior to commencing to pack, shall be reported direct to Ryan & Richardson, and shall be a part of the business of the season. All contracts made with growers for their apples, for future delivery by them, shall be subject to written or telegraphic consent by Ryan & Richardson, at a stipulated price."

The plaintiffs alleged their readiness and willingness to perform the agreement upon their part, but averred that the defendants failed and refused to perform it upon their part, whereby the plaintiffs were prevented from earning a large sum of money. The District Court sustained a demurrer to the plaintiffs' evidence. Of this they complain, and bring the case here for review.

The material question arises upon the interpretation of the language of the contract sued upon. Do the terms of this contract import a mutual engagement between the parties to it; the one to perform the services and the other to accept and pay for the same? or, is it a unilateral engagement — that is, an engagement by one party only? We feel constrained, after a careful study of the language of the instrument, to hold it to be the latter.

It is clear that the first paragraph of the instrument is the engagement of Woolsey, Powell and Paul alone. In that paragraph they agree to buy and pack apples in barrels to be furnished by Ryan & Richardson, but Ryan & Richardson make no agreement to engage their services. In the second paragraph of the agreement Ryan & Richardson agree to pay for the services of Woolsey, Powell and Paul and to furnish money for the purchase and barrels for the packing of the apples bought, and also agree to meet competition in the purchase of apples and to pay market prices for them; but they do not, even in this last paragraph, in terms engage the services of Woolsey, Powell and Paul. A

fair construction of this paragraph can evolve out of it nothing more than an agreement upon the part of Ryan & Richardson to do certain things, conditional upon the performance of the stipulated services by the other parties. It contains no engagement to accept their services or to enter with them upon the business of buying and packing apples.

The part of the instrument in question which comes nearest an engagement upon the part of Ryan & Richardson is the sentence : "It is *understood that the purchase of apples shall commence* as soon as it is deemed advisable by both parties to this contract, when apples can be purchased in sufficient quanties to insure getting a car load in a reasonable length of time, not to exceed three days on fall apples." It is alleged that inasmuch as both parties stated their understanding to be that the purchase of apples "shall commence," it was an agreement upon the part of Ryan & Richardson to allow it to commence ; in other words, an engagement by them of the services of Woolsey, Powell and Paul. It must be observed, however, that the purchases were not to commence until "deemed advisable by both parties." The law will not compel Ryan & Richardson to deem anything advisable, nor will it deem things advisable for them. The contract was not to commence purchases when a car load of apples could be obtained in three days, but it was to commence purchases "as soon as deemed advisable by both parties, when a car load of apples could be obtained," etc. It is true that the verb "shall commence" is modified as to time by the adverbial clause "when apples can be purchased," etc, but it is likewise modified as to time by the preceding adverbial clause "as soon as deemed advisable by both parties." The modification of the verb by both these clauses must be taken into account, and the intent of

the parties collected out of all the words used by them. So doing, the agreement in question would seem to mean that when a time arrives at which apples can be purchased in such quantities that a car load can be gotten in three days and the parties to the contract both agree to do so, then purchases shall commence.

Other clauses of the instrument in question might be similarly commented upon, and their meaning sought by rules of legal as well as grammatical construction, without extracting, as we think, the idea of mutuality of agreement between the parties. In all probability, the instrument was supposed to be binding upon both sides when it was signed ; but we can give effect to the intention of parties only through the words they employ. If they do not express themselves in intelligible language the law cannot afford them relief. For illustrations of the rule which requires mutuality of engagement between parties to contracts, see *Davie v. Lumberman's etc. Co.*, 93 Mich. 491 ; *Vogel v. Pekoc*, 157 Ill. 339 ; *Campbell v. Lambert*, 36 La. Ann. 35 ; *Dayton etc. Turnpike Co. v. Coy*, 13 O. S. 84 ; *Stensgaard v. Smith*, 13 Minn. 11.

The judgment of the court below is affirmed.

Johnston, J., concurring.

ALLEN, J. (concurring specially). 'I base my concurrence in the decision of this case on the ground that the contract sued on is too indefinite to constitute the basis of an action for damages. It was a contract on the part of the plaintiffs to buy apples for the defendants, but when they were to commence and how many they were to buy the contract fails to state. It therefore imposes no obligation on the plaintiffs to perform any definite services, nor on the defendants to accept or pay for any such services. I hardly think the contract can be properly denominated unilateral

or wanting in mutuality. If the parties had seen fit to execute it, it would have afforded a basis for the settlement of their rights growing out of the transaction contemplated by the parties when they entered into the written agreement.