## ROGERS et al. v. WHITE SEWING MACH. COMPANY.

No. 5883—Opinion Filed May 23, 1916.

(157 Pac. 1044.)

### Contracts—Principal and Agent—Existence of Relation—Validity of Contract.

A purported contract, by the terms of which R. is to procure a wagon and team and put a man on the road to sell the sewing machines of W., in consideration of which W. agreed to give R. the exclusive right to sell the machines of W., in H. county, so long as he should sell those machines, the machines to be shipped by W. as ordered by R. and paid for by R. at a price agreed upon, upon terms of credit agreed upon, there being no agreement as to any definite number of machines to be purchased of W. by R. and the termination of said agreement being solely at the pleasure of R., is so indefinite and uncertain, and so wanting in mutuality, as to be of no effect, and no action arises from the breach thereof.

(Syllabus by Rummons, C.)

Error from District Court, Haskell County.; W. H. Brown, Judge.

Action by the White Sewing Machine Company against R. E. Rogers and another. Judgment for plaintiff, and defendants bring error. Affirmed.

M. A. Dennis, for plaintiffs in error.

Guy A. Curry and G. A. Holly for defendant in error.

Opinion by RUMMONS. C. The defendant in error commenced this action in the district court of Haskell county against the plaintiffs in error, to foreclose a mortgage upon real estate. The parties will be hereinafter styled as they were in the court below. The defendants answered, admitting the execution of the note and mortgage sued on by plaintiff, and the defendant R. E. Rogers pleaded a set-off because of the breach of an oral contract entered into with plaintiff for the sale of the sewing machines of plaintiff in Haskell county. At the close of defendants' testimony plaintiff demurred thereto, which demurrer was sustained by the court. Thereupon the jury were instructed by the court to return a verdict for the plaintiff for the amount sued for. Judgment being entered upon such verdict and motion for new trial having been overruled, defendants prosecute this proceeding in error to reverse the judgment rendered.

It is claimed that a contract similar to the contract relied upon by the defendants was first entered into by the Rogers Mercantile Company, of which company defendant R. E. Rogers was president, and the plaintiff, in the year 1906. In the year 1910 the Rogers Mercantile Company ceased to do business, and defendant R. E. Rogers claims that he then entered into a contract with plaintiff upon practically the same terms and conditions. The defendant testified as to the original contract, in substance, as follows: That as manager of the Rogers Mercantile Company he made a contract with J. H. Sneed, who was then representing the White Sewing Machine Company; that Mr. Sneed came into the store and showed the defendant the advantages of going into the machine business and the profits of such business, and suggested that defendant go ahead and handle the White sewing machines in what is now Haskell county; buy a wagon and team, and put a man on the road to sell the White sewing machine, and in consideration that he would go ahead and do all of this the White Sewing Machine Company would give him the territory that is now Haskell county; that defendant contracted at that time for 50 machines, and put a man on the road at a salary of $75 per month; that the price of the machines was agreed upon, and the terms of credit; that the machines were to be shipped by plaintiff as defendant ordered them; that defendant put a man with a wagon and team in the field selling machines, and sold machines until the Rogers Mercantile Company went out of business. Defendant Rogers testified that at that time it was agreed between him and Mr. Loring, agent of the plaintiff, that he was to assume the sewing machine business of the Rogers Mercantile Company in his own name; that he was to have the territory of Haskell county for the sale of White sewing machines as long as he sold the machines; that defendant, after the Rogers Mercantile Company went out of business in 1910, sold machines in Haskell county, and ordered machines from the plaintiff at various times, which were delivered, until 1912, when the plaintiff refused to fill orders for machines sent in by the defendant. It is for this breach of the contract claimed by defendant that he seeks to interpose the set-off pleaded in this case.

Counsel for plaintiff demurred to the evidence of defendant on the ground that the contract testified to by defendant was within the statute of frauds, because it was a contract not to be performed within 1 year, and therefore void because not in writing, and upon the ground that the contract was void for want of mutuality. The trial court took

the view that the contract was void, and therefore directed the verdict for the plaintiff. In the view we take of the facts testified to by defendant, it is not necessary to consider the argument of counsel for the respective parties as to the contract falling within the statute of frauds, except to remark that the argument of counsel for defendants that it was not within the statute because it might have been completely performed within one year is an admission of its indefiniteness and lack of mutuality. We shall therefore only consider the question as to whether or not the contract is void for want of mutuality and uncertainty.

It is contended by counsel for defendant that the contract is a valid, mutual, and binding obligation upon the parties thereto. Counsel relies chiefly upon the case of Spencer v. Taylor, 69 Kan. 493, 77 Pac. 276. In that case Spencer contracted with Taylor and Reeves for the purchase of sufficient mineral waters of Geuda Springs to supply the trade of the city of Wichita, Kan., at a price agreed upon, for a period of five years, Spencer agreeing to furnish the vessels necessary in which to ship such mineral water, to pay all express or freight charges, to use his best endeavors to push the sales of said mineral waters in Wichita, to pay for all advertising and all other expenses made by him in connection with the sale of such water: and it was agreed that Spencer was to have the exclusive sale of said waters in said city of Wichita during the existence of the agreement. After the execution of the contract Spencer went to Wichita and purchased horses, wagons, tanks, cases, bottles, and other necessary articles to carry on the business, and expended large sums of money in advertising said mineral water, and spent his entire time in the work of advertising and selling said mineral water for a period of about a year from the time of the execution of the contract. Taylor and Reeves broke the contract by failing and refusing to deliver any more water to Spencer: and the Supreme Court of Kansas held the contract to be mutual, and binding upon both parties thereto, and that Spencer was entitled to recover his damages for the breach thereof. The contract in that case differs from the one testified to by defendant in the instant case in several particulars. In the first instance Spencer bound himself to advertise and push the sale of the mineral waters for a definite period of five years, while in the instant case the defendant did not obligate himself to continue the sale of the plaintiff's machines for any definite period, and might have discontinued the sale thereof at any time without violating any obligation shown to have been made upon his part. In the instant case the testimony does not disclose that the defendant obligated himself to sell the plaintiff's machines alone, or that he was to devote any particular part of his time and attention to the sale of such machines. We think the most serious difficulty with this contract lies in the indefiniteness as to its duration. The defendant could have terminated it at any time without incurring any liability to the plaintiff and we think that the facts in the instant case fall within the rule laid down by this court in the case of Arkansas Valley T. & L. Co. v. A., T. & S. F. Ry. Co., 49 Okla. 282, 151 Pac. 1028. In that case the court says:

"The contract, however, does not by its terms fix any period of duration between the parties, and its duration is indefinite, so that we are unable to determine just how long the parties contemplated that it should continue. This being true, it might be terminated by either party at any time. * * * In the case at bar, however, the identity of the subject-matter was left for future determination, and was only capable of being made certain by the concurrent act of the parties, and there is no present grant of any specific right therein capable of ascertainment, and neither party for a failure to carry out the terms of the agreement could require specific performance of the other because of this uncertainty; neither can an action for damages for breach thereof be maintained, as will appear hereinafter."

In the case of Baltimore & Ohio R. R. Co. v. Potomac Coal Co., 51 Md. 337, 34 Am. Rep. 316, the Supreme Court of Maryland says:

"It is essential to the validity of every contract of this character that there should be a mutuality of obligation. A contract is not binding on one of the parties unless it is binding on the other. Here, there is no obligation of any kind resting upon the appellee, for the breach of which an action would lie at the instance of the appellant. It was not obliged either to furnish the cars, or to keep them on the road after they were furnished. It might put them on the road one day, and take them off the next, just as its own interests might require. Cases are to be found, it is true, of executed contracts, where one has received the benefit of the consideration for which he bargained, and in which it is no answer to an action to say that the plaintiff was not bound by the terms of the original contract to do the act, and that there was therefore no mutuality of obligation. * * * This, however, is not the case of an executed contract, the consideration of which has been received by the railroad company, for although the coal company did furnish cars for the transportation of its own coal, yet it has the right at any time to withdraw them from the road, and for so doing there is no breach of obligation on its part."

In that case a railroad company wrote a letter to a coal company, agreeing that if the latter would place its own coal cars on the road of the former, for transportation of coal from P. to B., the former would allow one-fourth of 1 per cent. per ton per mile for such cars so used, would indemnify the coal company for damages to such cars caused by the fault of the railroad company, and would keep the cars in repair, charging the actual cost thereof, but would not agree for prompt transit, nor to give a number of cars equal to that so furnished. No term was specified for the continuance of the arrangement. The coal company thereupon provided a large number of cars at a large expense, which were so used for 10 years. Then, at the request of the coal company, the privilege was indefinitely and in like manner extended, on the same conditions, in consequence of which the coal company incurred great expense. Two years later the railroad company notified the coal company that the allowance would be reduced to one-eighth of 1 per cent. In an action by the railroad company to recover the difference in tolls and freight for a subsequent period, held, that the arrangement evidenced by the letters did not constitute a contract, but was a mere revocable license. Woolsey v. Ryan, 59 Kan. 601, 54 Pac. 664; Barton v. Spinning, 8 Wash. 458, 36 Pac. 439; Davie v. Lumberman's Min. Co., 93 Mich. 491, 53 N. W. 625, 24 L. R. A. 357; Christie v. Patton, 148 Ala. 324, 42 South. 614. The case of Baltimore & Ohio R. R. Company v. Potomac Coal Company, supra, answers the contention of defendant that this is an executed contract because the defendant did for the space of about two years buy and sell the machines of plaintiff. While that is true, no obligation rested upon him to continue to do so. He might, at any time, have ceased to buy the machines of plaintiff without liability upon his part. The principles which are applicable to an agency have no effect here, for the reason that the defendant was in no sense the agent of the plaintiff. The only relation that existed between them as disclosed by the evidence was that of buyer and seller. Under the terms of the agreement testified to by defendant the plaintiff agreed to sell to defendant such machines as he might order at a stipulated price. The defendant bound himself to order no specified number of machines. He need not order any or he might order them by the carload. We think there was clearly no mutuality in this sort of a contract, and that, no obligation being imposed thereby upon the defendant, the plaintiff incurred no obligation. Railway Co. v. Bagley, 60 Kan. 424, 56 Pac. 759; American Cotton Oil Co. v. Kirk, 68 Fed. 791, 15 C. C. A. 540.

The judgment of the court below should be affirmed.

By the Court: It is so ordered.