## SELBY v. SWINDLER.

No. 16849—Opinion Filed Sept. 28, 1926.

Rehearing Denied March 15, 1927.

1. **Oil and Gas—Purchase of Interest in Three Oil Leases and Drilling Contracts —Question for Jury Whether Transactions an Entirety or Distinct.**

Where A. purchases an interest in three oil leases and contracts for drilling, and A. delivers to B. a check for the full purchase price and the three assignments of interest are delivered to A. by B. simultaneously with the delivery of the check by A. to B., the question whether this transaction was entire or separable into three distinct deals or transactions presents a question of fact for the jury.

2. **Partnership—Existence of Relation—Evidence.**

Where the question of partnership is in issue, it is not error of the court to permit the introduction of evidence tending to prove the beginning and termination of the partnership.

3. **Oil and Gas—Purchase of Interest in Leases and Drilling Contracts Relying on Judgment of Other Partner—Nonliability of Other Partner for Repayment of Purchase Money Because of Failure to Drill on Condemned Tract.**

Where A. and B. are joint owners of several oil and gas leases and drilling contracts, and A. being an inexperienced oil operator, and A. enters into the partnership relying upon the experience, acumen, and judgment of B., an experienced oil operator, as to the advisability of drilling certain locations, and possession of the land involved in one of the drilling contracts acquired by A. and B. until P., an independent contractor or operator, has drilled three unproductive or "dry" holes upon the land, and B. thereafter in the exercise of his judgment refuses to do further drilling upon the condemned tract, A. cannot recover from B. the sum A. claimed he paid to B. for an interest in the drilling contract.

4. **Appeal and Error—Questions of Fact – Conclusiveness of Verdict.**

Questions of fact are exclusively within the province of the jury in a jury trial, and where questions of fact are submitted to a jury, and the instructions of the court applicable to the facts fairly state the law, this court will not disturb the verdict and judgment of the trial court.

5. **Appeal and Error—Harmless Error—Admission of Evidence.**

Where A. purchases an interest in several oil and gas leases and drilling contracts from B., some of which prove highly productive and valuable, and B. refuses to drill locations on condemned or proven unproductive leases, and A. brings his action to recover from B. the amount A. claims to have paid for an interest in such unproductive lease or drilling contract, the admission in evidence of the sums of the profits realized by the partners, A. and B., on other leases during the continuance of the partnership, while not strictly in issue, is not such error, under all the facts and circumstances in the instant case, as will cause a reversal of the verdict and judgment.

6. **Instructions Approved.**

Instructions examined, and, held, the same fairly and correctly state the law applicable to the facts in the instant case.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Action by J. L. Selby against James A. Swindler. Judgment for defendant, and plaintiff appeals. Affirmed.

Linebaugh, Pinson & Fite, for plaintiff in error.

Neff & Neff and Harry G. Davis, for defendant in error.

Opinion by RUTH, C. The parties hereto will be referred to herein as they appeared in the, trial court.

Plaintiff alleges defendant was the owner of a certain contract for the development for oil and gas purposes on the N. W. ¼ of the S. E. ¼, S. 21 T. 15, R. 14 E., and on June 14, 1921, defendant conveyed one-half of his interest in the contract for development to plaintiff for the sum of $6,000, and that it was further agreed that plaintiff and defendant should each bear one-half of the expense of drilling and exploring the land for oil or gas. That defendant, who was an experienced oil producer and operator, did deepen one well and drill another well on the land, and plaintiff paid his share of the expense, amounting to $801.36, and thereafter defendant refused to expend his money, time, and skill in further attempting to develop the property for oil and gas, and plaintiff prays judgment against defendant in the sum of $6,801.36.

A "memorandum of agreement" between plaintiff and defendant is attached to the plaintiff's amended petition. To this amended petition defendant filed his answer, consisting of a general denial. The cause was tried to a jury, and a verdict returned for defendant, and after motion for a new trial filed and overruled, this cause was regularly appealed to this court for review on petition in error and case-made.

The assignments of error set forth in plaintiff's brief are leveled against instructions numbered 2, 3, and 4, as given by the court, and to the introduction of certain evidence introduced by defendant over the objections of plaintiff.

Defendant was an experienced oil man, and had known plaintiff about 12 years. In 1920 plaintiff "went in" with defendant on a lease, and lost $4,000, but this did not deter him from continuing in the oil game, and he wanted in on something else. Defendant told him he was a good loser, and would be a good oil man, and a good partner, and offered plaintiff one-half his interest in "production" he had on 36-15-14, at a price which was afterwards reduced to $15,000. Plaintiff thought this price too much for the production, and wanted to know if defendant had anything else he would put in, and defendant said he had an interest in a dry hole on 26-15-14 and a drilling contract with Rainey and Linebaugh on 21-15-14, that might produce oil if they got a clear title.

Plaintiff said "I will take it." Defendant assigned one-half his interest in the leases and contracts to plaintiff, and plaintiff gave defendant his check for $15,000. According to plaintiff's testimony this transaction constituted three separate deals, including $8,000 for the interest in 36-15-14, $1,000 for 26-15-14, and $6,000 for 21-15-14. The defendant testified it was all one deal for $15,000, which the plaintiff paid with one check at the time of the delivery of the three assignments. This was a question of fact for the jury, and they found in favor of the defendant.

The evidence further disclosed defendant promised plaintiff that he would let him in on any "good stuff" he got on a 50-50 basis, and it is not controverted that defendant did let plaintiff in on all deals he made after the one in question. One of these deals included the purchase by warranty deed of the S. ½ of S. E. ¼, sec. 21, from Annie & Irene Osborne. Defendant made this purchase, giving his personal check for $10,000, but immediately told plaintiff of the deal, and offered him a one-half interest for $5,000, which plaintiff accepted, and it was further testified that plaintiff's interest in the Osborne deal at the time of the trial was worth $250,000, and plaintiff had already drawn more than $30,000 from the working interest and more than $10,000 from the royalty interest on this deal alone.

At the time of the execution of the contract between the parties hereto, and the delivery of the assignments and the $15,000 check, defendant, as second party, was in possession of a drilling contract with Rainey, McKinnon & Linebaugh of the first part, in which it was disclosed the Papoose Oil Company had a lease on this land, which the first parties agreed to remove by court proceedings. The second party agreed to drill a well in the southwest corner of 21-15-14, to the Wilcox sand, first parties to receive 7/16ths of the oil, and if the well produced more than 300 barrels per day first parties to receive $5,000 in cash.

Second party agreed to drill a second and third well, within a specified time, the cost of drilling and equipping to be borne by both parties, as in the agreement set forth, and it further provides:

"Successive locations shall be made and drilled in the time and manner and under the terms and conditions as herein provided for the drilling of the second and third wells until all locations have been drilled."

One-half of defendant's interest in this drilling contract was assigned to plaintiff,

who thereby acquired a one-fourth interest therein, and plaintiff—

"agrees to join the party of the first part (this defendant) in the completion of the drilling contract aforesaid, and in the fulfillment of the other provisions of the terms and conditions of said lease."

The record further discloses that these contracts and agreements were made in June, 1921, at which time the Papoose Oil Company had a lease upon 21-14-14, and this lease was not released and a clear title made until December, 1923, and during this 2½-year period, defendant was never in possession of 21-14-14, until the Papoose Oil Company had drilled into the Glenn sand and got a dry hole. There was another dry hole to the Wilcox sand, and another dry hole, or, as plaintiff expressed it, a "water well," but certainly it produced no gas or oil. Rainey, McKinnon & Linebaugh were to bear no part of the expense of drilling dry holes, and it is in evidence that eight "locations" is a fair average for 40 acres, and this would have necessitated plaintiff and defendant drilling five more wells with little or no prospect of oil, and the drilling expenses would have had to be borne entirely by plaintiff and defendant, and this defendant, as an experienced oil developer, wanted to release the drilling contract, but the plaintiff, being inexperienced in oil development, wanted to continue drilling, notwithstanding he testified he relied entirely upon defendant's knowledge of oil development in all the deals he had gone into. Defendant offered to give plaintiff his interest in 21-15-14 if he wanted to attempt its development, but plaintiff entered into a "modified" contract with Rainey, McKinnon & Linebaugh, wherein it recited that this plaintiff and defendant should drill two more wells within a certain period or forfeit certain sums for a period of 80 days, after their refusal, as liquidated damages, which sum would amount to $3,000, and at which time the drilling contract would be considered canceled. This modified contract was signed by Rainey, McKinnon & Linebaugh on the one part, and this plaintiff on the other part, but defendant refused to execute it. Plaintiff contends he was induced to execute the contract by defendant, but this the defendant denies, and testifies the modified contract was signed by plaintiff before defendant ever saw it. However that may be, all the foregoing were facts for the jury, and were decided in favor of defendant.

Plaintiff first argues there was error in the court admitting evidence introduced by defendant as to the partnership of the parties hereto on the Beggs lease, where plaintiff lost $4,000 prior to the consummation of the deal under review.

The only testimony set forth in the plaintiff's brief under proposition No. 1 is as follows:

"Q. You say the beginning of your partnership with Selby was in 1920 on the Beggs lease? A. Yes, sir. Q. You drilled a well on that lease together? A. No, sir. Q. He paid the same amount you did—did he pay you some money? A. He paid me $4,000. The Lowry Oil Corporation had a drilling contract with me, and they completed a well to the Wilcox sand for a half interest. Q. But that was the beginning of your partnership? A. Yes, sir."

Plaintiff directs our attention to page 175 of the record, where these questions and answers appear, and while we are of opinion, under all the facts disclosed by the record, that the time of the beginning of the partnership and its terms, as well as the termination thereof, was relevant and material, nevertheless, there was but slight reference made to the partnership beginning in 1920 in defendant's examination in chief, and this was not objected to by the defendant, and the questions set out therein were propounded by plaintiff, and where a party permits testimony in chief to be introduced without objection, and then proceeds to cross-examine the witness, and the questions propounded on cross-examination enlarge the scope of the testimony, the party so cross-examining cannot assign the admission of such testimony as error.

As a second assignment of error plaintiff contends:

"The consideration of a promise, or an option to purchase other property under the circumstances herein involved, is too vague and indefinite to be treated as a contract."

We cannot so view the agreement, as after the partnership was formed, or the agreement entered into, plaintiff and defendant went into all deals on a 50-50 basis, and the testimony related to executed contracts, and while no evidence was introduced showing how much money plaintiff had drawn from all these various wells, it did show that defendant had let plaintiff in on the Osborne property, and plaintiff's interest was at the time of the trial worth $250,000, and this on an investment of $5,000, and this contract is a continuing one and must continue as long as oil is produced in paying quantities on the Osborne property.

Plaintiff cites Arkansas Valley Town & Land Co. v. A., T. & S. F. Ry. Co., 49 Okla.

282, 151 Pac. 1028, but that case is not in point. There, there were no executed or continuing contracts, and nothing to indicate the termination of the contract, and either party might terminate it at will, and this indefiniteness, and the fact that the damages were too remote and conjectural to the susceptible of computation with reasonable certainty, formed the basis of the opinion, and the court, in considering the other phases of the contract, said:

"When the parties enter into a contract, we should presume they intended something was to be done thereunder, and that they did not purposely do a vain and idle thing, and therefore, if possible, it should be so construed as to uphold it. Section 953, Rev. Laws 1910, is as follows:

" 'A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties'."

Section 957, Rev. L. 1910, is as follows:

"A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

Section 962, Rev. L. 1910, is as follows:

"Repugnancy in a contract must be reconciled, if possible, by such an interpretation as would 'give some effect to the repugnant clause, subordinate to the * * * intent and purposes of the whole contract."

Section 965, Rev. L. 1910, is as follows:

"Stipulations which are necessary to make a contract reasonable or conformable to usage are implied in respect to matters concerning which the contract manifests no contrary intentions."

In Rogers v. White Sewing Machine Co., 59 Okla. 40, 157 Pac. 1044, cited by plaintiff, the White Sewing Machine Company agreed to furnish machines, and after some years terminated the contract by refusing to furnish machines, and the contract being terminable by Rogers, the court held it was so indefinite and uncertain and so wanting in mutuality as to be of no effect.

Nor does Central Mortgage Co. v. Michigan State Life Ins. Co., 43 Okla. 33, 143 Pac. 175, cited by plaintiff, fall within the purview of the facts in this case, and we find no error in the admission of the testimony complained of in this behalf.

The third proposition presented as error by the plaintiff is:

"The proof of the value of other properties purchased by the plaintiff from the defendant is entirely immaterial and highly prejudicial."

No authorities are cited by plaintiff, and the argument presented is very brief and unconvincing, and we cannot view the admitted testimony in the light of error, and we feel this matter has been fully covered in this opinion under the second proposition.

Plaintiff's final assignment of error is directed against the judgment of the court, overruling plaintiff's motion for a new trial, and in this assignment he discusses briefly instructions 1, 2 and 4.

Plaintiff in his petition alleges his deal with defendant relative to the contract on 21-15-14 was a separate contract, and the sum of $6,000 was paid solely by reason of said agreement and understanding.

As before stated, plaintiff gave no separate check for this amount, but gave a check for $15,000, and received three assignments in consideration thereof, and did accept and receive other assignments of a half interest in other properties, as agreed, according to defendant's testimony.

The court instructed the jury that it was necessary for the plaintiff to prove that, when the $15,000 check was given, the consideration for the assignments were separable and not entire, and $6,000 of this amount was for the contract in 21-15-14, and that when plaintiff released the drilling contract thereon, he was compelled so to do by reason of defendant's refusal to perform the contract and do further drilling, and that such release was not executed voluntarily and not because the original drilling contract was harsh in its terms and probably unprofitable.

Instruction No. 2, in substance, instructs the jury that if they find it was separable and was an independent contract, they should find for the plaintiff. Instruction No. 4 is, in substance, the converse of No. 2.

No authorities are cited on either side relative to these instructions, and we have carefully reviewed the same in connection with the pleadings and the evidence, and are of opinion they correctly state the law applicable to the particular facts as disclosed by the record.

Finding no material or prejudicial error in the record calling for a reversal of the judgment, the judgment of the trial court will be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 40 C. J. p. 1147, §799. (2) 30 Cyc. p. 405 (Anno.) (3) 40 C. J. p. 1149, §805. (4) 4 C. J. p 851, §2843; 38 Cyc. p. 1512; 2 R. C. L. p. 193; 1 R. C. L.

Supp. p 432; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79. (5) 4 C. J. p. 1172, §3201. (6) 40 C. J. p. 1149, §805.