A. G. BARTLETT, Appellee,

v.

STERLING CONSTRUCTION COMPANY, a corporation, Appellant.

No. 43176.

Supreme Court of Oklahoma.

April 25, 1972.

Rehearing Denied Aug. 1, 1972.

Tom Durham, Tulsa, for appellee.

Bert C. McElroy, Sanders & McElroy, Tulsa, for appellant.

LAVENDER, Justice.

This appeal arises in an action in which the appellee, A. G. Bartlett, as the plaintiff, sought a judgment in the amount of $24,600.00 against the appellant, Sterling Construction Company, a corporation, as the defendant, as the unpaid balance claimed to be due him as salary under an alleged contract of employment.

A jury trial resulted in a verdict for the plaintiff in the amount of $20,075.00. Judgment was rendered accordingly. After its motion for a new trial was overruled, the defendant appealed to this court on the original record and a transcript of the proceedings at the trial.

The appeal was assigned to the Court of Appeals, Division No. 2, for opinion. That court reversed the judgment and remanded the cause to the trial court with directions to enter judgment for the defendant. In doing so, it sustained the defendant's first proposition, treating the action as being one for damages for breach of contract and holding that the contract was not enforceable because of lack of mutuality of obligations and failure to specify the duration of its effectiveness. That court denied the plaintiff's petition for rehearing. The plaintiff filed a petition for certiorari

for a review by this court of the decision of the Court of Appeals. Certiorari is granted; the decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

In his amended petition, the plaintiff pleaded the execution and delivery of an instrument in writing (hereinafter referred to as the "memorandum"), in words and figures as follows:

"STERLING CONSTRUCTION COMPANY
Telephone Jackson 4–1633
Post Office Box 9733
Oklahoma City 18, Oklahoma
January 28, 1960

Mr. A. G. Bartlett
3519 South Wheeling Street
Tulsa, Oklahoma

Dear Mr. Bartlett:

Confirming our conversation of Wednesday, January 27, 1960 in your office at the above address, we agree to pay you $300.00 a month starting February 1, 1960 as an employee of this corporation.

The salary of $300.00 per month will be adjusted in accordance with the salary of J. E. Peterschmidt and L. H. Brown, president and vice president respectively. For example, Mr. Peterschmidt's and Mr. Brown's salary are now $600.00 a month but should these salaries be increased to $800.00 a month your salary would automatically be raised to $400.00 a month.

It is also agreed that any assistance that you render to the corporation in bonding contract work will be paid at the same rate as charged by the bonding company. As an example, we would like to bid a job amounting to $300,000.00 but have bonding capacity equal to only $100,000.00. The additional $200,000.00 in bonding would be paid as a separate fee to you. To further detail this matter, we pay the bonding company $750.00 for each $100,000.00 of bond, so your fee, in this particular instance, would be $1,500.00.

If you agree to the conditions outlined above, will you so indicate by signing your name in the space provided below.

Approved:
/s/  J. E. PETERSCHMIDT
J. E. Peterschmidt, President

Approved:
/s/  L. H. BROWN
L. H. Brown, Vice Pres.

Approved:
/s/  A. G. BARTLETT
A. G. Bartlett"

---

The plaintiff then alleged that, at the time the memorandum was signed, the salary of the president, Peterschmidt, was $600 a month and the salary of the vice-president, Brown was $600 a month; that, as of October 1, 1960, Peterschmidt's salary as president was increased to $800 a month and Brown's salary as vice-president was increased to $700 a month, and that, under the contract, this automatically increased the plaintiff's salary from $300 a month to $400 a month, as of the same date. He also alleged that, as of May 1, 1961, Peterschmidt's salary as president was increased to $1,000 a month, and that, under the contract, this automatically in-

creased the plaintiff's salary from $400 a month to $500 a month, as of the same date.

Under those allegations, the plaintiff was entitled to salary in the total amount of $13,700 for the 32-month period from February 1, 1960, through September of 1962—$300 a month for the first eight months, $400 a month for the next seven months, and $500 a month for the next seventeen months. The plaintiff alleged that the defendant paid him $300 for each of those 32 months, for a total of $9,600, leaving an unpaid balance of salary due under the contract in the amount of $4,100 as of September 30, 1962.

The plaintiff alleged that the last salary payment of $300 was made to him on October 10, 1962; that the defendant paid him nothing under the contract after that date; and that, during the period from that date until February 22, 1966, the officers Peterschmidt and Brown told him, from time to time, he would ultimately receive all of his salary according to the contract and that it would continue to accrue on the corporation's books as a liability. He also alleged that, as the result of relying upon those officers' statements and actions, he was lulled into a feeling of security and did not press his claim for salary due him under the contract; and that those officers fraudulently concealed from him the fact that their salaries had been increased as he alleged, and he did not learn about such increases until March 1, 1966.

The amended petition further alleges that, on February 22, 1966, "the defendant breached said contract entirely and arbitrarily terminated the same" and advised the plaintiff that he would be paid nothing further on the contract; and that, as of that time, salary in the additional amount of $20,500 had accrued under the contract for the 41 months from October 1, 1962, through February of 1966, making a balance of salary in the total amount of $24,600 which is "justly due, owing and unpaid" under the contract. He prayed for judgment in that principal amount, with interest and the costs of the action.

Concerning his duties as an employee of the corporation, the plaintiff testified that he did not office with the company, had no specific routine duties, and his principal function was "basically as an advisor or consultant jointly with Mr. Peterschmidt or Mr. Brown," and that he got together with them "quite often."

Each of the seven Oklahoma cases cited by the defendant in its argument under its first proposition involved an action for damages for breach, or breaches, of the contract involved. They do, for the most part, support the principles of law relied on by the defendant, as applied to actions for damages for breach of contract. However, the cases cited in support of its argument that an agreement which is indefinite in its provisions concerning the duration or termination of the agreement does not meet the requirements of an enforceable contract, do not support that argument. Those cases—Arkansas Valley Town & Land Company v. Atchison, T. & S. F. Railway Co. (1915), 49 Okl. 282, 151 P. 1028; Rogers et al. v. White Sewing Machine Company (1916), 59 Okl. 40, 157 P. 1044; Foster v. Atlas Life Insurance Company (1932), 154 Okl. 30, 6 P.2d 805; Dunn v. Birmingham Stove & Range Company (1935), 170 Okl. 452, 44 P.2d 88, and Dunn et al. v. Dunn (1964), Okl., 391 P.2d 885—stand for the rule stated in Dunn v. Birmingham Stove & Range Company (an exclusive dealership case) at page 89 of 44 P.2d:

"  *   *   * The general rule as to contracts of the nature here involved is that, where the contract itself provides no definite period of time it shall remain in force, the law presumes it shall last as long as both parties desire, and terminate at the will of either party [citations]."

They hold that, in such a situation, such contracts may be terminated at any time by either party without the consent of the other and without incurring any liability to the other for doing so.

The amended petition in the present case tacitly recognizes that either party to this contract could terminate it at any time without the consent of the other party and without incurring any liability to the other party for doing so.

In spite of the allegation in the amended petition that the defendant "breached" the contract entirely and "arbitrarily terminated" the same on February 22, 1966, this is not an action for damages resulting from a breach of contract through an allegedly unauthorized or arbitrary termination thereof by the defendant.

This is an action for an unpaid balance of "salary" as an employee of the defendant corporation (mentioned in the first two paragraphs of the memorandum pleaded by the plaintiff), allegedly "accrued" under the agreement, and "justly due" and "owing" to the plaintiff, after deducting amounts theretofore paid thereon, as of the time he alleges the defendant terminated the contract.

The plaintiff argues that, in such a situation, lack of mutuality and of definiteness in the provisions of a contract are no defense to an action on the contract. He says that, in this particular instance, the matter of the duration or termination of the contract is not involved except that the termination of the contract by the defendant marks the break-off point after which no more salary could accrue under the contract.

In Sherbondy et al. v. Tulsa Boiler & Machinery Company et al. (1924), 99 Okl. 214, 226 P. 564, 565—an action for money due on a contract to furnish materials for the construction of a refinery, and to establish and foreclose a materialman's lien therefor—this court, in affirming a judgment for the plaintiff, said:

"The defendants insist that said contract is void for want of mutuality, and because it is too vague and indefinite. It is true, where a contract is so vague and indefinite that the intention of the parties cannot be ascertained therefrom, or where there is a want of mutuality, an action for damages for breach of said contract cannot lie, nor can specific performance of said contract be required; yet, when such contract has been fully performed by one of the parties, and the opposite party accepts the benefits of said contract, it becomes binding on such party, and *it relates back and takes effect as of the date of the contract.* [Citations]. So, when the plaintiff fully performed its part of the contract by furnishing the material which it agreed *to furnish, and it was accepted, it cannot* be said that the contract is void for vagueness and indefiniteness, because these elements have been supplied by the performance; neither can it be said that the contract is void for want of mutuality, because that element was supplied by the defendants ratifying the contract, and accepting the benefits of it." (Emphasis supplied)

Livingston v. Blair (1924), 104 Okl. 238, 231 P. 82, was an action for money due under a contract concerning the plaintiff's obtaining of contracts to supply the defendant with casinghead gas, the terms of which were not definitely prescribed, and the plaintiff was not obligated, by the terms of the contract in question, to obtain any casinghead gas contracts for the defendant. In affirming a judgment for the plaintiff, based on the verdict of a jury, this court quoted the following from 13 C. J. 335:

" 'Although there is a lack of mutuality in the beginning, this may be cured by the other party subsequently binding himself also by promise or act. Thus if A. promises B. to pay him a sum of money if he will do a particular act or make a particular promise, and B. does the act, the promise thereupon becomes binding, although B. at the time of the promise does not engage to do the act or to make the promise. In the intermediate time the obligation of the promise is suspended, for until the performance of the condition of the promise there is no consideration, and the promise is nudum pactum; but, on the performance of the

condition by the promisee, *it is clothed with a valid consideration, which relates back to the promise,* and it then becomes obligatory. Therefore a contract to pay a certain sum on the performance of certain acts by another becomes a binding obligation on the promisor on the performance of said acts *before the revocation of the contract,* although it expresses no consideration, past or present, and contains no promises that such acts shall be performed.'" (Emphasis supplied)

The court also said in that opinion:

"* * *. For the same reasons set forth above, defendant cannot complain here that said contract is too indefinite for enforcement, since it was made definite by himself by accepting the services performed in good faith and within a reasonable time. * * *."

Also, see: Harlow Publishing Company v. Patrick (1937), 181 Okl. 83, 72 P.2d 511; Western Beauty Supply Company v. Duart Sales Company (1943), 192 Okl. 6, 133 P.2d 202, and Henry Keep Home v. Moore et al. (1947), 198 Okl. 198, 176 P.2d 1016, to the same effect.

◼ In considering a demurrer to a pleading, the pleading is to be liberally construed, in favor of the pleader. The amended petition herein alleges that a stated amount of salary, as an employee of the defendant, had accrued under the agreement between the starting date stated in the memorandum and the date plaintiff alleges the defendant terminated the agreement. It alleges that, during the first 32 months of that period, the defendant paid his monthly salary at the rate the president and the vice-president of the corporation allowed him to believe was the rate provided for in the contract, in a stated total amount. This left a balance in a stated amount, which the plaintiff alleges is "justly" due and owing to him as salary under the contract, and remains unpaid.

It is to be noted that the plaintiff's action, as pleaded, does not involve, in any manner, any claim for "fee" for assistance rendered the corporation in bonding contract work, mentioned in the third paragraph of the memorandum.

◼ We think that, for the purpose of a demurrer thereto, the amended petition sufficiently alleges full performance of the plaintiff's part of the contract and acceptance of the benefits thereof by the defendant. Under the last-cited cases, this would make the parties' agreement a binding and enforceable contract from the starting date until terminated by one or the other of the parties. Also, under those cases, this obviated the necessity of pleading the plaintiff's specific duties, if any, as an employee of the defendant.

This view of the amended petition also disposes of the defendant's third proposition, that the court erred in overruling its demurrer to the amended petition made upon the ground that it did not allege that the plaintiff had performed, or tendered performance of, his obligations under the contract.

It also disposes of the defendant's second proposition. That proposition is to the effect that the court committed reversible error in failing, on its own motion, to instruct the jury on one of the fundamental issues in the case, that performance of his obligations under the contract for each and every month was a condition precedent to the plaintiff's recovery of the agreed salary for any particular month.

We say this partly because the defendant admitted in its answer and/or by stipulation during the trial that it entered into the written agreement of January 28, 1960, pleaded in the amended petition, and, from then until October 10, 1962, paid to the plaintiff salary in the amount of $300 a month for the 32 months from February 1, 1960, through September of 1962, in the total amount of $9,600, as alleged in the amended petition.

◼ As we view that situation in the light of the principles of law stated in the Sherbondy and Livingston cases, supra, the defendant, by paying to the plaintiff what it considered to be his agreed monthly sal-

ary as an employee under their agreement, recognized and ratified the "employee" portion of the agreement as a valid contract which would remain valid and effective until terminated by one or the other of the parties thereto.

Since the contract could be terminated at the will of either party, even without cause, it follows that it could have been terminated by the defendant at any time it decided that the plaintiff's services as such employee were no longer needed, or never had been needed, or that he was not performing his duties as such employee, whatever they were, if any.

Also, we think it is clear from the memorandum that assisting the corporation in bonding contract work was not intended to be, and was not, involved in any manner in the plaintiff's contemplated duties as an "employee" of the corporation. Consequently, contrary to the defendant's argument, the plaintiff's performance of services in connection with the bonding of contract work was not a condition precedent to his recovery of any part of the salary involved in this action.

■ Therefore, the plaintiff's failure or refusal to perform his obligations under an indemnity agreement with United States Fidelity and Guaranty Company concerning its making of contractor's bonds for the defendant corporation (mentioned in the defendant's answer), could not, of itself, affect the plaintiff's status as an "employee" of the defendant corporation. It follows that—contrary to the defendant's fourth proposition—the trial court did not err in telling the jurors to disregard any testimony concerning the plaintiff's repudiation of that indemnity agreement because a failure or refusal by the plaintiff to perform obligations under the indemnity agreement would not constitute a repudiation, breach or termination of his contract as an employee of the corporation.

Neither the first, second, third nor fourth proposition urged by the defendant can be sustained.

■ The defendant's final proposition is that the trial court erred in admitting into evidence plaintiff's exhibit No. 8. That exhibit purports to be a tabulation of the respective amounts of monthly salary paid to the plaintiff as well as to the defendant's president, Peterschmidt, and its vice-president, Brown, during the period from February 1, 1960, through February of 1966, together with a tabulation of the additional amounts of salary "due" the plaintiff, in the total amount of $24,600.00, for the same period. All of the figures shown thereon are in accordance with the allegations of the amended petition concerning those matters.

The defendant points out that, in addition to admitting, by its answer and/or by stipulation at the time the exhibit was offered in evidence that it entered into the agreement alleged in the petition and from then until October 10, 1962, paid a monthly salary of $300, in the total amount of $9,600, to the plaintiff, as alleged in the amended petition, it admitted by stipulation at the time the exhibit was offered in evidence that salary increases were given to its president, Peterschmidt, and its vice-president, Brown, as of the times, and in the amounts, alleged in the amended petition.

The defendant argues that, since all of the "facts" shown in the exhibit had been admitted by the defendant and were not in issue, the tabulation of those facts was inadmissible. It also argues that the rest of the exhibit, setting forth the plaintiff's conclusions as to the amounts "due" him as salary under his theory of the law and the facts, invaded the province of the court and of the jury, and was highly prejudicial to the defendant.

In its general instructions to the jurors, the trial court told them, among other things, that the burden was upon the plaintiff to establish, by a preponderance of the evidence (as defined therein) the affirmative allegations of his amended petition and, unless he has done so, their verdict should be for the defendant, and that the

**432**

burden was on the defendant to establish, by a preponderance of the evidence, all of the affirmative allegations of its answer and, unless it has done so, their verdict should be for the plaintiff. The court also instructed them that an employment contract which does not contain a fixed period of duration can be terminated at any time by either party upon notice. Neither party excepted to that instruction.

In its instruction No. 5, the court told the jurors that the interpretation of a written contract is a matter of law for the court, and that it interpreted the contract in this case to mean that, in the event of an increase in the salary of the president and/or vice-president of the corporation, the plaintiff's salary would automatically be increased to an amount equal to one-fourth of the combined salaries of the president and vice-president—which, incidentally, is the ratio of 300 to 600-plus-600 admittedly prevailing when this contract was made. Neither party excepted to that instruction.

In its instruction No. 6, the court told the jurors: If they found that the parties entered into an agreement, in February of 1966, under which the liability of each party to the other was settled (as alleged by the defendant), their verdict should be for the defendant. If they found that (as alleged by the defendant) the plaintiff agreed, when the salaries of the defendant's officers were raised as of October 1, 1960, and as of May 1, 1961, that his salary would remain the same, he would not be entitled to any additional salary for the period between October 1, 1960, and October 1, 1962, or, if they found that the plaintiff had knowledge, at the time, of those salary raises (as alleged by the defendant), but did not agree that his salary would remain the same, then, because of the five-year statute of limitation (pleaded by the defendant), he would not be entitled to recover any amount for any time prior to April 25, 1961. If they failed to find that the plaintiff had any knowledge, at the time, of those salary increases, he would be entitled to additional salary of $75 per month from October 1, 1960, to May 1, 1961, and additional salary of $125 per month from May 1, 1962, to October 1, 1962.

Instruction No. 6 also told the jurors if they failed to find (as alleged by the defendant) that the contract was terminated on October 10, 1962, the plaintiff would be entitled to $425 per month from October 1, 1962, to February 22, 1966, but, if they found that the contract was terminated on October 10, 1962, the plaintiff would not be entitled to any salary thereafter. That instruction also told the jurors that, in no event, may the plaintiff's recovery exceed $20,075.00—which, by the way, is the result of dividing by four the admitted combined salaries of Peterschmidt and Brown during the period from February 1, 1960, and February 28, 1966, and then deducting the $9,600 admittedly paid to the plaintiff up to October 10, 1962. Neither party excepted to that instruction.

The jury's verdict, as mentioned hereinabove, was for the plaintiff in the amount of $20,075.00. This, of necessity, includes findings of all of the issues of fact in favor of the plaintiff and against the defendant. We think it is obvious that the jurors paid no attention to the plaintiff's conclusions as to the amounts "due" him as unpaid salary, as shown on his exhibit No. 8.

If the court's allowing the exhibit to be admitted in evidence and taken to the jury room was error, it was not prejudicial error. Under the provisions of the statutes now appearing as 12 O.S.1971 § 78 and 20 O.S.1971 § 3001, the judgment based upon that verdict cannot be reversed or set aside because of the admission of the exhibit in question.

The matter of the sufficiency of the evidence to support the verdict and the judgment based thereon is not presented in this appeal.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

All of the Justices concur.